**John L. HAGAN, Plaintiff,**

v.

**Paul COGGINS, et al., Defendants.**

**No. 4:99CV878A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Dec. 15, 1999.

John L. Hagan, Dallas, TX, Pro se.

Howard Alan Borg, U.S. Attorney's Office, Fort Worth, TX, Thomas Butler Alle-

man, Winstead Sechrest & Minick, Dallas, TX, for Defendants.

Scott A. Scher, McGlinchey Stafford, Dallas, TX, Pro se.

### MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

After having considered the motion of defendant the Honorable Jerry Buchmeyer, Chief Judge of the United States District Court for the Northern District of Texas, for recusal of the undersigned judge, and the responses thereto, the undersigned has concluded that he should recuse.

### I.

#### The Nature of the Action

Plaintiff, John L. Hagan, instituted this action by filing a complaint on October 20, 1999, naming as defendants Judge Buchmeyer, Paul Coggins, who is serving as United States Attorney for the Northern District of Texas, and unnamed employees and agents of the Department of Justice. The action is a *Bivens* action,[1] combined with a claim that the defendants engaged in a "Racketeering Activity," as defined by 18 U.S.C. § 1961.

Hagan alleges that he filed a previous *Bivens* action against Coggins and another party, which was assigned to the Honorable Sam Lindsay, a district judge in the Dallas Division of this court, with a reference to the Honorable Jane Boyle, a magistrate judge in the same division, for the handling of pretrial matters. His specific factual allegations against Judge Buchmeyer are

> that he caused, reviewed, consulted with and encouraged Magistrate Judge Boyle to prepare a misleading report in a fashion to confuse Hagan and deny Hagan fair treatment in the Court; that Defen-

---

1. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

dant Buckmeyer [sic], caused the caption of the case, as reflected in the records of the U.S. District Court and the records of the Fifth Circuit to fail to list Defendant Coggins and Scott in their individual capacities, making such information unavailable to inquiry over the Internet; and that Buckmeyer [sic], who's [sic] shares both his criminal and civil clerks with Judge Lindsay, covered up the true nature of Hagan's claims against Defendant Coggins and Scott and denied Judge Lindsay access to the investigative reports prepared by the FBI which substantiated Hagan's claims against Coggins and Scott.

Compl. at 4. He added that:

All of the above stated claims obstruction of justice, tortuous interference in Hagan's business and resulted in mental anguish, loss of income and hardship on Hagan which would otherwise not have existed. Plaintiff Hagan further alleges the Defendant Buckmeyer [sic] knew that his actions would result in harm to Hagan and benefit Defendant Coggins.

*Id.* Hagan seeks joint and several recovery from Judge Buchmeyer and the other defendants of actual damages of approximately $400,000.00 and punitive damages of $750,000.00; and, "[t]o the extent that action of Defendants described herein constitute a felony, Hagan seeks punitive damages of $1,000,000 for each occurrence." *Id.* at 8.

## II.

### *The Motion for Recusal*

Judge Buchmeyer, through his attorney, Thomas B. Alleman of Winstead Sechrest & Minick P.C., filed on November 12, 1999, a motion asking the undersigned to recuse, asserting that "a reasonable person knowing all the circumstances [would] harbor doubts about this [judges'] impartiality." Mot. at 1. Summed up, the "circum-

stances," which are described by Judge Buchmeyer in the brief he filed in support of his motion, relate primarily to actions taken by Judge Buchmeyer against the undersigned. Judge Buchmeyer apparently contends that his actions were so offensive that a reasonable person, knowing of Judge Buchmeyer's conduct and of the undersigned's responses to such conduct, would harbor doubts about the undersigned's ability to preside impartially in an action ' to which Judge Buchmeyer is a party.

■ So. that the reader will have a better understanding of the reasons for the decision of the undersigned to recuse, and bearing in mind that the test is whether a reasonable person knowing *all the circumstances* would harbor doubts about the judge's ability to be impartial, *Chitimacha Tribe of La. v. Harry L. Laws Co.,* 690 F.2d 1157, 1165 (5th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983), the "Factual Bases for Recusal" given by Judge Buchmeyer in his supporting brief, Br. at 1, *et seq.,* are described below and have been supplemented with references to related facts that are pertinent to the ones he enumerates.[2] Discussing them in chronological sequence, the "circumstances" upon which Judge Buchmeyer relies in support of his motion are as follows:

### A. *Judge Buchmeyer's "Skit."*

The "skit" is a subject to which Judge Buchmeyer alludes on page 4 of his brief. In the latter part of 1993, Judge Buchmeyer authored, published, and caused to be publicly performed several times what he has called a "skit" entitled "Judge McBryde's Song," which was extremely derogatory of the undersigned. When, several months later, the undersigned learned of the skit and its performance

---

**2.** The preferred course seems to be for the judge who has been asked to recuse to document the reasons for his or her decision. *See United States v. Greenspan,* 26 F.3d 1001, 1007 (10th Cir.1994). Nevertheless, in this memorandum opinion the undersigned is limiting the disclosure of his reasons for recusal to the facts alleged by Judge Buchmeyer in his motion and related facts.

(by, among others, Judge Buchmeyer's then wife), he made known to Judge Buchmeyer his disapproval of Judge Buchmeyer's conduct in making such an attack on a fellow judge.

### B. *Judge Buchmeyer's Unlawful Case Transfers.*

In the spring of 1995 Judge Buchmeyer interfered with the undersigned's judicial business by unlawfully transferring two cases, *Torres v. Trinity Indus., Inc.,* No. 4:90–CV–812–A (N.D.Tex.), and *United States v. Satz,* No. 4:94–CR–094–A (N.D.Tex.), from the undersigned's docket to his own because of his disagreement with judicial actions the undersigned had taken in those cases, which were directed against the Clerk of this court and an assistant United States attorney. Reference is made to these case transfers on the first page of Judge Buchmeyer's brief. They are the case transfers to which the Fifth Circuit referred, and vacated, in *In re McBryde,* 117 F.3d 208 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 712 (1998).

Judge Buchmeyer made the transfers after he discussed the matter with the Honorable Henry Politz, then the Chief Judge for the United States Court of Appeals for the Fifth Circuit, when, using Judge Buchmeyer's own words, one morning his "brilliant thoughts occurred," and he said to himself, " 'hey, I've got the right to take that case away from him,' actually both of them." Tr. of 10/19/95 hearing before Special Committee at 42 (hereinafter 10/19/95 Tr.), No. 95–05–372–0023, Judicial Council of the Fifth Circuit. While the *Torres* and *Satz* cases were pending on his docket as a result of the case transfers, Judge Buchmeyer issued three lengthy opinions in those cases in which he said things highly critical of the undersigned and the undersigned's handling of the cases, and by which he set aside findings made and conclusions reached by the un-

dersigned while the cases were on his docket. *See In re McBryde,* 117 F.3d at 215–17. After the Fifth Circuit ruled that Judge Buchmeyer had no authority to make the case transfers, and set them aside, the undersigned issued orders in the *Torres* and *Satz* cases vacating the orders Judge Buchmeyer had issued.

### C. *The Ghostwriting by Judge Buchmeyer of a Letter from the Clerk of the Court.*

In March 1995, the court, through the undersigned, ordered the Clerk of the court to provide information relative to the Clerk's failure to comply with a judgment entered several years earlier by the undersigned directing the Clerk to deposit in an interest-bearing account $40,000.00 in the court's registry belonging to an infant. The Clerk responded with a letter that was critical of that order. This is the letter to which Judge Buchmeyer refers on page 7 of his brief. As Judge Buchmeyer mentions in his brief, during testimony taken in October 1995, the Clerk disclosed that Judge Buchmeyer played a role in writing the letter, and directed her to send it to the undersigned notwithstanding her reluctance to do so. *See* 10/19/95 Tr. at 76; *In re McBryde,* 117 F.3d at 214, 219. One of the judicial actions that preceded, and prompted, Judge Buchmeyer's transfer of the *Torres* case to his docket was the issuance in April 1995 by the undersigned of an order concerning the letter.

### D. *The Undersigned's "Request for Assistance."*

When the undersigned met with Judge Politz and Judge Buchmeyer in late May 1995 to discuss the possibility of resolving the case transfer dispute amicably, he was told by Judge Politz, in the presence of Judge Buchmeyer, that if he further protested the case transfers, his entire career as a judge would be explored.[3] 10/19/95

---

**3.** The undersigned's belief is that after the May 1995 meeting, Judge Buchmeyer actively solicited complaints that could be referred, by way of Judge Politz, to the Judicial Council to

provide justification for the special committee (appointed by Judge Politz) and the Judicial Council (led by Judge Politz) to explore the undersigned's entire judicial career.

Tr. at 39. Despite Judge Politz's threat, in late June 1995 the undersigned made a written request of the Judicial Council of the Fifth Circuit to assist him by causing the cases to be returned to his docket. *See* Br. at 1–2. As a result, he was subsequently made the focus of Special Committee and Judicial Council proceedings through which his entire judicial career was explored, resulting in the orders against the undersigned to which Judge Buchmeyer refers in his brief. Br. at 2–4. Because of those proceedings and orders, the undersigned has incurred legal expenses of more than $1,000,000.00 defending acts taken by him in his official capacity, of which he has already paid over $900,000.00 out of his personal funds. None of those expenses would have been incurred had it not been for the unlawful transfers Judge Buchmeyer made of the *Satz* and *Torres* cases.

### E. *The Testimony Given by Judge Buchmeyer on October 19, 1995.*

After the undersigned submitted his request to the Judicial Council for assistance in resolving the case transfer dispute, Judge Politz formed a special committee, of which he was a member, and arranged for it to take testimony in New Orleans, Louisiana, on October 19, 1995, purportedly to consider the undersigned's request for assistance. Sworn testimony Judge Buchmeyer gave on that date, *see* Br. at 2, out of the presence of the undersigned,[4] is demonstrably false[5] in many instances, and was highly misleading in others. It appears that a goal of the testimony was to create a record that would support a false conclusion that the undersigned is mentally ill.[6] The testimony given by Judge Buchmeyer on October 19 undoubtedly played a significant role in the order Judge Politz signed for the Judicial Council on October 20, 1995.

### F. *The Order of October 20, 1995.*

As Judge Buchmeyer points out on page 2 of his brief, the Judicial Council denied the undersigned's request for assistance. The denial was contained in an order Judge Politz signed for the Judicial Council on October 20, 1995, which expressed a declination to rule on the issue of whether Judge Buchmeyer had the authority to make the case transfers, and ordered, on the Judicial Council's own purported authority, that the *Satz* and *Torres* cases be transferred from the undersigned's docket to Judge Buchmeyer's effective the date when Judge Buchmeyer made his case transfers. In addition, the order was highly critical of the undersigned's judicial actions in his handling the *Satz* and *Torres* cases. This is one of the orders to which the Fifth Circuit referred in July 1997 in

---

4. The undersigned, who gave testimony immediately before Judge Buchmeyer commenced his, asked of Judge Politz, who was presiding, that he be permitted to be present while Judge Buchmeyer and the other witnesses testified against him. Judge Politz denied the request. The testimony of Judge Buchmeyer and others who testified before the special committee that day—out of the presence of the undersigned—formed the nucleus for further proceedings against the undersigned. *See* 10/19/95 Tr. at 40; *In re McBryde*, 117 F.3d 208, 217 (5th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 712 (1998).

5. The falsity of areas of Judge Buchmeyer's testimony has been confirmed by written statements of three other judges in this district.

6. In addition to testifying that he thinks the undersigned is "sick," 10/19/95 Tr. at 60, Judge Buchmeyer elaborated on the suggestion of Judge Politz by saying that "the paranoia just comes out" from the judicial actions the undersigned took in the *Satz* and *Torres* cases, *id.* at 65. He gave no other basis for his statement that the undersigned is "sick." *See id.* In contrast, the Fifth Circuit noted that it "need not attribute paranoia or irrationality to Judge McBryde to explain" his conclusions in *Satz*, and that "there were legitimate reasons" for him to reach those conclusions, and went on to state that the conclusions the undersigned reached relative to the conduct of the Clerk of the court in *Torres* were "similarly within the bounds of reason" and were "not irrational." *In re McBryde*, 117 F.3d 208, 219 (5th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 712 (1998).

*In re McBryde* when it vacated "the reassignment orders," 117 F.3d at 230, and is the order to which the Fifth Circuit had reference when it said that it was an improper censure of the undersigned for his conduct in the *Satz* and *Torres* cases,[7] *id.* at 228–29.

The rulings by the Fifth Circuit in *In re McBryde* against Judge Buchmeyer, Judge Politz, and the Judicial Council precipitated further actions against the undersigned by Judge Politz, the special committee he appointed, and the Judicial Council.

G.  *Judge Buchmeyer's Attempts to Reverse the Rulings of the Fifth Circuit in In re McBryde.*

As Judge Buchmeyer notes on page 2 of his brief, he petitioned the Fifth Circuit for a rehearing *en banc* of the July 1997 holding in *In re McBryde*, and, when that was unsuccessful, he unsuccessfully petitioned the Supreme Court for a writ of certiorari. *Judicial Council of the Fifth Circuit v. McBryde,* —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 712 (1998).

H.  *Request of the Undersigned to Take Judge Buchmeyer's Deposition.*

The undersigned recently filed a motion to take the oral deposition of Judge Buchmeyer and others in a civil action he filed in the United States District Court for the District of Columbia by which he is seeking, *inter alia,* adjudications that the actions taken against him by Judge Politz and the Judicial Council after July 1997 are unenforceable and unconstitutional. This is the motion mentioned on page 3 of Judge Buchmeyer's brief. It was prompted by information the undersigned received through copies of letters written this year by Postal Inspector Rex Whiteaker to Judge Buchmeyer, the Clerk of this court, the Honorable Carolyn King, now Chief Judge of the United States Court of Appeals for the Fifth Circuit, and

the Honorable William J. Bauer, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit.

Postal Inspector Whiteaker is one of the persons who was criticized by the undersigned while presiding over the *Satz* case before Judge Buchmeyer transferred it to his docket. After Judge Buchmeyer took over the *Satz* case, he set aside findings the undersigned made that were viewed to be adverse to the postal inspector. Judge Buchmeyer ruled "that the adverse findings ... issued by Judge McBryde concerning ... Postal Inspector Rex Whiteaker ... have no factual basis," that "Inspector Whiteaker [was] at all times truthful," and that Mr. Whiteaker had "at all times behaved honorably, with decorum, and in the finest traditions of [his office]." 8/2/95 Order at 20, *United States v. Satz,* No. 4:94–CR–094–A (N.D.Tex.).

The letters by Postal Inspector Whiteaker include statements (a) that he has concluded that Judge Buchmeyer, in cooperation with other governmental officials, engaged in activities Mr. Whiteaker considers to be criminal in nature (4/16/99 letter from Whiteaker to Buchmeyer at 3), (b) that he is convinced that the rights of the undersigned have been violated (9/18/99 letter from Whiteaker to Bauer at 4), and (c) that he accuses "the Department of Justice and Fifth Circuit Judicial Council of manipulating the statute for the discipline of federal judges to chastise and neutralize a jurist they considered a political liability" (*id.* at 6). The undersigned believes that if he were to take the oral deposition of Judge Buchmeyer, he would develop additional evidence related to the statements made by Mr. Whiteaker in his letters.

### III.

#### *The Responses to the Motion*

Defendant Coggins and the Department of Justice responded to Judge Buchmeyer's motion saying that they "would inform

---

7.  *In re McBryde* was a mandamus action the undersigned filed in the Fifth Circuit seeking relief from the October 20, 1995, order Judge

Politz signed for the Judicial Council. The undersigned named Judge Buchmeyer as well as the Judicial Council as respondents.

the court and the parties to this action that, without adopting the Motion for Recusal, they support the motion and do not oppose the relief sought therein." Resp. of Defs. Coggins and Dep't of Justice at 2. Defendants Scott Scher and Dick Fogel responded that "[w]ithout adopting or endorsing the motion, Defendants Fogel and Scher hereby confirm that they do not oppose the motion or the relief sought therein." Resp. of Defs. Dick Fogel and Scott Scher at 2.

While the certificate of conference on Judge Buchmeyer's motion recites that the plaintiff "stated that he takes a neutral position concerning the relief requested in this motion and advised counsel that plaintiff's position would be that recusal was 'a matter for the Court and the statute,'" Mot. at 2, plaintiff Hagan, in fact, did not take a neutral position. His memorandum and brief in response to the motion for recusal asserts that "a recusal of Judge McBryde would be appropriate only if Judge Buchmeyer vacated his position as Chief Judge during the pendency of this case." Pl.'s Mem. & Br. at 5.

Plaintiff points out in his response that he is a certified public accountant with no legal training who is faced with a number of lawyer defendants; and, he argues "that the scales of Justice are so heavily weighted in favor of Chief [Judge] Buchmeyer, that the recusal of Judge McBryde would only further weight the scales of justice in favor of the Defendants." Id. at 4. As an alternative to withholding a ruling on the motion to recuse, plaintiff asks the court to issue a change of venue and remove the proceedings to the district court of the District of Columbia "on the basis that such a move would eliminate the 'bias' that currently exists because of Judge Buchmeyer's role of Chief Judge in this district." Id. at 5.

## IV.

### Analysis

▇ Judge Buchmeyer seeks recusal under the authority of 28 U.S.C. § 455(a), which reads as follows:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The Fifth Circuit has interpreted § 455(a) to require a movant thereunder to "show that, if a reasonable man knew of all the circumstances, he would harbor doubts about the judge's impartiality." *Chitimacha Tribe of La.,* 690 F.2d at 1165.

▇ Recusal is not required simply because a party has personally attacked the judge in other proceedings. *E.g., United States v. Olander,* 584 F.2d 876, 887 (9th Cir.1978) (defendant had been leader in efforts to impeach the judge, including newspaper and television appearances; motion to disqualify denied, and affirmed on appeal), *vacated on other grounds,* 443 U.S. 914, 99 S.Ct. 3104, 61 L.Ed.2d 878 (1979). "Prior written attacks upon a judge are likewise legally insufficient to support a charge of bias or prejudice on the part of a judge toward the author." *United States v. Bray,* 546 F.2d 851, 858 (10th Cir.1976).

However, the reactions of the undersigned to Judge Buchmeyer have gone far beyond reactions to mere personal attacks by Judge Buchmeyer. Had Judge Buchmeyer stopped with his skit, and perhaps with the offensive and unlawful orders he signed in *Torres* and *Satz,* recusal probably would not be required. But, when he set upon a course of cooperating with Judge Politz to disrupt, if not destroy, the undersigned's judicial career, he took the facts of this case far beyond a set that would justify non-recusal.

Plaintiff alleges that Judge Buchmeyer engaged in inappropriate conduct as chief judge of this district, and that in the course of doing so he interfered with litigation the plaintiff had pending before another judge of this district against the local United States Attorney. His complaints are strikingly similar in principle to some of the conduct in which Judge Buchmeyer engaged against the undersigned. An ob-

jective observer could well harbor doubts about the ability of the undersigned to impartially adjudicate Judge Buchmeyer's rights when faced with such a claim.

Furthermore, Judge Buchmeyer's credibility could become an issue in this action. A reasonable person knowing that the undersigned is aware that Judge Buchmeyer gave false and misleading testimony under oath against the undersigned likely would harbor doubts about this judge's ability to impartially assess Judge Buchmeyer's credibility. Also, the existence of the ongoing legal action, in which there are issues related to the conduct of Judge Buchmeyer, undoubtedly would be taken into account by a reasonable person in forming a belief as to whether the undersigned could impartially preside over a case such as this in which Judge Buchmeyer is a direct party from whom the plaintiff is seeking a personal judgment for significant sums of money. Moreover, the hypothetical reasonable person surely would harbor doubts about this judge's impartiality in presiding over this case upon learning that Judge Buchmeyer's unlawful conduct has cost the undersigned personally over $1,000,000.00—more than the total of his after-tax salary throughout his judicial career of over nine years.

■■ While the undersigned has concluded he should recuse, he has concerns as to the proper order to be made for further handling of this action. Under normal circumstances, the chief judge of this court would play a role in reassignment of the case following recusal by the presiding judge. However, by case law of the Fifth Circuit, Judge Buchmeyer is prohibited from playing such a role in this case. See McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1261 (5th Cir. 1983). That same Fifth Circuit authority prevents this judge from selecting the judge or the court to whom the action should be reassigned. Consequently, even if the court had the power to honor plaintiff's suggestion that there be a change of venue to the district court of the District of Columbia, the undersigned would not be permitted to participate in such an action. Certainly, the undersigned does not have the power to order Judge Buchmeyer to vacate his position as chief judge during the pendency of this case, as plaintiff suggests he should.

The court understands, and can appreciate, plaintiff's concern that Judge Buchmeyer's status as chief judge in this district raises a question whether other judges in this district can impartially adjudicate plaintiff's rights, bearing in mind the nature of plaintiff's complaint, i.e., that Judge Buchmeyer and the other defendants manipulated the judicial system to the detriment of plaintiff. While judges in this district often preside over cases brought against another judge or other judges in the district, the nature of plaintiff's claim against Judge Buchmeyer puts this case in somewhat of a different category. Moreover, it has been noted that "judges commonly disqualify themselves when a fellow judge in their district is a party to a legal proceeding." United States v. Singer, 575 F.Supp. 63, 68 (D.Minn.1983). Perhaps the solution lies in the provisions of 28 U.S.C. § 292(b), which reads:

> (b) The chief judge of a circuit may, in the public interest, designate and assign temporarily any district judge of the circuit to hold a district court in any district within the circuit.

However, because of the factors mentioned in this memorandum opinion, the undersigned has concluded that he should not be the one to direct a request to the chief judge of the Fifth Circuit to make such a designation and temporary assignment. The decision whether such a request will be made is left to the judge to whom this case is reassigned because of the undersigned's recusal.

## V.

### ORDER

The undersigned hereby recuses from further presiding over this action, and

hereby directs the Clerk of this court to reassign this action by random draw in the Fort Worth Division of this court.