Grecia TORRES, A Minor, Appearing Through Sanjuana TORRES, Her Mother and Next Friend,

v.

TRINITY INDUSTRIES, INC.

and

Grecia Torres, A Minor, Appearing Through Sanjuana Torres, Her Mother and Next Friend,

v.

United States of America

Nos. 4:90–CV–812–A, 3:96–CV–1870–A.

United States District Court, N.D. Texas, Fort Worth Division.

Oct. 1, 2002.

Frank L. Branson, Highland Park, Dallas, TX, for Plaintiff.

Paul M. Millingsley, Asst. U.S. Atty., U.S. Atty's Office, Dallas, TX, for Defendant.

### MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

On June 21, 2002, the court received from the Law Offices of Frank L. Branson, P.C., a response to the directive of the court's order of May 28, 2002, that the United States and the attorneys who have represented Mrs. Torres and Grecia Torres file documents setting forth their respective objections to, or disagreements with, any of the facts recited, or any of the conclusions, tentative conclusions, or proposed courses of action expressed, in the court's memorandum of May 28, 2002, and all reasons therefor.

The United States filed a document on June 21, 2002, that purported to be in response to the May 28 order but did not provide the specificity contemplated by the order, stating instead only that the United States "respectfully disagrees with the recitations expressed in the May 28th Order concerning its handling of Federal Tort Claims Act ['FTCA'] Case No. 3:96–CV–1870–A." On July 2, 2002, the court granted the United States an extension to July 9, 2002, within which to comply with the May 28 order. On July 9, the United States filed her response and her motion to recuse under 28 U.S.C. §§ 144 and 455, which was accompanied by a declaration of an official of the Department of Justice.

### I.

### Branson's Response

The response from the Law Offices of Frank L. Branson, P.C., says that it was submitted on behalf of lawyers of that office, Frank L. Branson, and George (Tex) Quesada. It opens with the assertion, unsupported by any recitation of fact, argument, or legal authority, that, "should any proceedings ... be undertaken against Respondents in this Court concerning the matters that are the subject of the Court's [May 28] Memorandum and Orders (Amended), [the undersigned] would be disqualified under the provisions of 28 U.S.C. §§ 144, 455(a) and 455(b)(1) from presiding over such proceedings." Branson Resp. at 2. The respondents then state that they do not object to the proposed courses of action the court described on pages 34–41 of the May 28 memorandum, except in the following respects:

Respondents do not believe it appropriate or in the interest of Grecia Torres to

replace her mother as her next friend, or to undo the terms of the October 25, 1996 settlement if such action would have the consequence of returning money to the United States and embroiling the Torreses in further litigation with the United States.

*Id.* at 3. The response is unclear as to the nature of the relief that would be sought on behalf of Grecia if the terms of the October 25, 1996, settlement were to remain in effect.

Branson's response is accompanied by an annex that provides the respondents' specific objections and disagreements. The respondents assert that (1) any suggestion in the May 28 memorandum that the interests of Frank Branson or his firm were in conflict with Grecia's interest is misplaced "because no one connected with that firm had any participation in or responsibility for causing Grecia's $40,000.00 not to be properly invested," Branson Resp., Annex A at A–1, ("first assertion"), and (2) they should not be criticized for the actions they took after the discovery that Grecia's fund had not been properly invested because they were under the handicap of receiving conflicting instructions from Judge Buchmeyer, Judge Politz, and the undersigned, and because they made Grecia's claim under the FTCA on the basis of information given to them by Nancy Doherty, the clerk whose office participated in causing the fund not to be invested as ordered ("second assertion").

A. *As to the first assertion:*

The respondents say that the clerk was mistaken when she said (shortly after the discovery that Grecia's funds had not been invested) that Grecia's lawyers shared responsibility for the noninvestment, and that the deputy in Ms. Doherty's office gave false information when the deputy said that Grecia's lawyers had responsibility. According to the respondents, the United States Court of Appeals for the Fifth Circuit was in error when it said in its opinion in *In re McBryde* that Grecia's attorneys "asked that the clerk hold the funds until the attorneys could set up a Mexican trust fund" and that "[n]either the attorneys nor the deputy followed up on this pan ...." 117 F.3d 208, 214 (5th Cir.1997), *cert. denied,* 524 U.S. 937, 118 S.Ct. 2340, 141 L.Ed.2d 712 (1998). And, concerning the sworn testimony given by Judge Buchmeyer in October 1995 that "Frank [Branson] was a little embarrassed because their office was at fault, just like the district clerk's office was ...," 5/28 Mem. at 14, the respondents say that Judge Buchmeyer gave incorrect testimony inasmuch as, respondents say, Branson made no such statement to Judge Buchmeyer.

Summing up, the respondents say that: They are not aware of "any competent evidence" that Mr. Branson or any attorney with his firm "had any involvement in the clerk's failure to timely invest the funds or engaged in any conversations with the clerk's office which allegedly resulted in the failure to timely invest the funds." Branson Resp., Annex A at A–2. Ms. Doherty's statements incriminating Branson "contain multiple layers of hearsay and would be inadmissible under FED.R.EVID. 801–04." The recitations of the Fifth Circuit in its *In re McBryde* opinion "should not bind Respondents since they were not present to introduce any evidence or cross-examine any witnesses during the evidentiary phase of any hearing." *Id.* at n. 1.

There is no explanation by the respondents of why they did not learn by followup inquiry with the clerk at any time during the more than three years while Grecia's funds were sitting in the clerk's office uninvested that their client's funds were not being properly handled.

B. *As to the second assertion:*

The respondents maintain that they should not be criticized for filing an administrative FTCA claim in early 1995 on behalf of Grecia for more than $2,000 less than the amount of her damages at that time because, they say, they were guided by Ms. Doherty's advice that the lesser amount would be an appropriate amount to be used in Grecia's claim against Ms. Doherty. *Id.* at A–2 to A–3 (where the respondents explain: "Based upon Nancy Doherty's letter of April 4, 1995, indicating the investment that she would have made for Grecia, the sum of $4,901.82, appeared to be the maximum amount available. The figure of $5,600.00 was an attempt to obtain an even higher amount of recovery for Grecia Torres. At the time of these events, Frank Branson and George (Tex) Quesada accepted Nancy Doherty's damages calculation to be accurate.") And, the respondents' explanation seems to be that, rather than to do their own legal research on behalf of Grecia, they pursued the FTCA remedy for her because "[t]he clerk's office and the Administrative Office of the United States Courts advised that the Federal Tort Claims Act was the 'exclusive remedy' for this type of claim." [1] *Id.* at A–3.

According to the respondents, their decision in the spring of 1995 to accept a settlement of Grecia's claim for less than the full amount of her loss was prompted by instructions given to them by Judge Buchmeyer. *Id.* at A–4. When they were considering alternative approaches to the gaining of relief for Grecia, "instructions were received [by them] from Judge Buchmeyer requiring the FTCA approach, and the case was then transferred to his docket." *Id.* at A–5.

Apparently the respondents maintain that they sought for Grecia no more than they did in the FTCA suit they filed in July 1996 because they were limited to the amount they had asserted on behalf of Grecia in the administrative claim. They reiterate that they were following the instructions of Judge Buchmeyer in pursuing the FTCA remedy, and the advice of Ms. Doherty as to the amount of damages that should be sought against her in their suit.

Similarly, in explanation for the decision of the respondents to accept $4,901.82 in settlement of all claims Grecia might have, past or in the future, by reason of Ms. Doherty's failure to comply with the judgment ordering Grecia's funds to be invest-

---

1. As comments of the respondents suggest, the Administrative Office of the United States Courts conducted itself inappropriately in this matter by giving the clerk instructions as to steps to be taken to remedy the clerk's failure to comply with an order of the court rather than to direct the clerk to promptly report the matter to the court and be guided by the court's instructions. The initial instructions given by the Administrative Office to the clerk are disclosed by an intra-office e-mail message from a deputy clerk to Ms. Doherty on March 22, 1995 (six days after the clerk learned of noncompliance with the investment order):

> I talked to Mike Eisert at the AO [Administrative Office] about the problem and he said that *we probably have an obligation to notify the attorneys* and he recommended

that I talk to Bob Lesh at the General Council. I talked to Bob Lesh and he said that I should talk to John Chastain who should be back in the office tomorrow.

Pam mentioned that *if we notify the attorneys that we will definitely have to notify Judge McBryde who was the judge who signed the order.*

3/22/95 E-mail from Holt to Doherty (emphasis added). While suggesting that the clerk "probably [has] an obligation to notify the attorneys," there was no suggestion by the Administrative Office that the court be notified that the clerk had failed to comply with an order of the court. Only as an apparent afterthought did it occur to one of the deputy clerks (Pam) that the undersigned would have to be notified if the attorneys were.

ed at the highest available rate of interest, the respondents say "Judge Buchmeyer was of the opinion that the United States could not and would not pay more than $4,901.82 to settle the claim" and that "Frank Branson relied on the government's representation made to George (Tex) Quesada who also was aware of the law that appeared to support the United States's position." *Id.* at A–7.[2] In their discussion of the reasons for settling the FTCA suit for $4,901.82, the respondents represent that "Respondents had Mrs. Torres's authority to resolve the matter."[3] *Id.* at A–7.

No satisfactory explanation is offered by the respondents as to why they did not use their own judgment as to the nature of the remedy that should be pursued on behalf of Grecia or as to the dollar amount that should be sought as compensation for her loss. The respondents offer no explanation as to why they did not file Grecia's suit in the Fort Worth Division, nor do they explain why they did not object to Judge Buchmeyer presiding over the case (bearing in mind his previously announced

**2.** Considering the assertions made by the respondents on this subject, the court is puzzled why the respondents bothered to file the FTCA suit in July 1996, bearing in mind that the administrative claim they submitted on behalf of Grecia in April 1995 was only for $4,901.82, plus postclaim interest on that amount for "the ten weeks expected in processing the claim." 5/28 Mem. at 16–17 n.4. They knew when they filed the suit that the government was taking the position that it would not pay postclaim interest, but that it would agree to a settlement for $4,901.82. *Id.* at 20–21. The appearance is that the filing and prosecution of the suit was but a rather time-consuming and expensive ritual that had as its goal the taking of steps that might later be relied on as the basis of a contention that, even though Grecia was an infant, she was bound by the inadequate settlement by virtue of court approval of the settlement.

**3.** This is inconsistent with information the court has received. According to the court's

predisposition in favor of Ms. Doherty, the defendant, and against the interest of their client, Grecia).

## II.

### *The Government's Response and Motion to Recuse*

#### A. *The Response.*

First, the government responds by objecting generally to the court's tentative conclusion expressed in the May 28 memorandum that Grecia should be given relief under Rule 60(b) of the Federal Rules of Civil Procedure from the adverse actions taken against her on October 29, 1996, in number 3:96–CV–1870. Then, the government objects that many of the statements made in the May 28 memorandum are based on information outside the record of number 3:96–CV–1870. In conclusion, the government argues that the actions taken in number 3:96–CV–1870 in October 1996 should not be disturbed because they occurred almost six years ago.

information, Mr. Branson's office, through Mr. Quesada, first informed Mrs. Torres by letter of October 27, 1995, that Grecia's funds had not been invested as the court had ordered. Of course, that was months after Mr. Branson had already made the FTCA administrative claim for Grecia in Mrs. Torres's name, 5/28 Mem. at 16–17 n.4, and had agreed in early 1995 on behalf of Mrs. Torres and Grecia to a settlement of the claim for $5,600.00, *id.* at 16–17. Moreover, the information of the court is that Mr. Branson's office did not inform Mrs. Torres of the $4,901.82 settlement that was reached in October 1996 until Mr. Branson's office, through Mr. Quesada, sent her a letter on December 16, 1996, informing her that they "have a resolution in the case of the interest that has been lost," that they had received a check payable to her and Mr. Branson's firm, and that they were sending her a power of attorney for her review and signature.

The United States does not contend that the case was properly assigned to Judge Buchmeyer, or that Judge Buchmeyer properly presided over the case, or that Grecia's interests were properly represented, or that there was no need for appointment of a guardian *ad litem* for Grecia, or that Grecia received in the October 1996 settlement of her claims the amount to which she was legally entitled.

## B. *The Motion to Recuse.*

The motion to recuse recites that it is pursuant to 28 U.S.C. §§ 144 and 455. It is over the signature of the United States Attorney for the Northern District of Texas, but the evidentiary support offered for the motion is the declaration of Jeffrey Axelrad, the Director of the Torts Branch of the United States Department of Justice.[4] In sum, the ground of the motion and Axelrad declaration is that the undersigned has been so involved since early 1995 in issues and proceedings growing out of the clerk's failures to perform her duties in regard to Grecia's registry fund, and the related unlawful conduct of Judge Buchmeyer and the late Judge Politz directed against the undersigned, and has been so injured by those proceedings, that he would not be able to preside over this action in the future in an unbiased manner. The government alleges that:

> This Court's extensive personal knowledge of, extrajudicial involvement in, and investigation of the disputed factual issues surrounding the *Torres* litigation

prevent the Court from presiding over this *sua sponte* Rule 60(b) inquiry....

The recitations contained in the May 28th Order, as well as the inferences and tentative conclusions drawn from those recitations, appear to be based in part on the information this Court has gathered, the positions this Court has taken, and the perceptions this Court has announced, during the course of seven years of judicial and quasi-judicial proceedings to which this Court was, and still is, a party, and in the course of some of which the Court became the subject of disciplinary proceedings and a public reprimand.

Resp. & Mot. at 4. The government then catalogs, through the declaration of Axelrad, the proceedings and events in which the undersigned has been involved since, and because, the undersigned took issue in April 1995 with the inappropriate handling by the clerk of court of the fund being held by the clerk for Grecia's benefit.

## III.

### *Analysis*

A. *The Responses Do Not Provide Any Valid Reason Why Rule 60(b) Relief Should Not Be Granted Grecia.*

Due to the conclusion the court has reached relative to recusal, the discussion under this heading will be short.[5]

Neither Branson nor the government takes issue with the facts that have caused the court tentatively to conclude that Rule

---

4. Mr. Axelrad is the official who played a prominent role in causing the settlement that had been reached between the Administrative Office and Mr. Bransom's office in early 1995 to be aborted and who provided the "legal" framework that led to the disposition of Grecia's claim in late 1996 for approximately one-half of the amount of her loss at that time. *See* 5/28 Mem. at 20–22.

5. Because of the desirability of a full disclosure of factors entering into a decision to recuse, *see United States v. Greenspan*, 26 F.3d 1001, 1007 (10th Cir.1994), the court is providing a brief discussion of the merits of the responses. The court does not want there to be any impression that the undersigned's recusal decision has been prompted in any respect by a lack of confidence in the tentative conclusion that Rule 60(b) relief should be granted Grecia.

60(b) relief should be granted, relieving Grecia of the burdens of the documents that were filed in number 3:96–CV–1870 on October 25, 1996. There is no denial that the court can *sua sponte* grant the relief, or that the court has a duty to protect the interest of Grecia as an infant. There is no contention that the court is incorrect in concluding that the proceedings in 3:96–CV–1870 were highly irregular. No suggestion is made in either response that the case was properly assigned to Judge Buchmeyer, that Judge Buchmeyer properly presided over the case, that Judge Buchmeyer acted properly in not appointing a guardian *ad litem* for Grecia, that the amount of recovery sought for Grecia in the suit was adequate to compensate her for her loss, or that the amount she received in the October 1996 settlement was adequate to compensate her for her past and future damages. Thus, the factors that cause Rule 60(b) relief to be appropriate remain unchallenged.

### B. *The Request for Recusal.*

The government is correct when it suggests that the proceedings to which the undersigned has been subjected over the past seven years (at a significant personal cost to the undersigned, *see, e.g., Hagan v. Coggins*, 77 F.Supp.2d 776, 779–80 (N.D.Tex.1999)) had their inception in the actions the undersigned took in the spring of 1995 in an attempt to protect Grecia's financial interests. Those actions led to (1) the intervention by then Chief Judge Buchmeyer into the handling by the undersigned of Grecia's case, (2) the joinder by then Chief Judge Politz with Judge Buchmeyer in attacks on the undersigned's judicial actions in Grecia's and a related case, (3) an October 1995 order of the Judicial Council of the Fifth Judicial Circuit, over which Judge Politz presided, criticizing the undersigned's actions in Grecia's and the other case and interfering with the undersigned's handling of both cases, and (4) the ruling by the Fifth Circuit in a mandamus action filed by the undersigned that the attacks by Judge Buchmeyer and the Judicial Council on the undersigned's handling of Grecia's and the other case were unlawful.

As has been noted,[6] the undersigned's success in the mandamus action did not end the matter. Rather, it racheted up the pursuit by a Judge Politz-led committee and Judicial Council of disciplinary proceedings against the undersigned, which initially in part were inspired by, and predicated on, the undersigned's judicial actions on behalf of Grecia.

But, the government is incorrect in thinking that the factors mentioned above provide a reason why the undersigned should recuse.

■ The taking of steps to protect the interest of Grecia, such as those the undersigned took in the spring of 1995, were judicial actions of the undersigned that were consistent with—indeed compelled by—the undersigned's obligations toward the infant plaintiff. *See* 5/28 Mem. at 35–36. Actions taken, and knowledge acquired, by a judge in the performance of his judicial functions ordinarily cannot form the basis for recusal. *See, e.g., United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Curl v. Int'l Bus. Machs. Corp.*, 517 F.2d 212, 214 (5th Cir.1975). *See also Liteky v. United States*, 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). No exception to the general rule exists in this case.

---

**6.** *See United States v. Marshall*, 77 F.Supp.2d 764, 765 n. 1 (N.D.Tex.1999); *Hagan v. Cog-* gins, 77 F.Supp.2d 776, 781 (N.D.Tex.1999).

■ All actions taken by the undersigned through the mandamus petition to the Fifth Circuit to cause Grecia's case to be returned to the undersigned's docket were consistent with—indeed compelled by—the undersigned's obligations to protect and preserve judicial independence and to hear and decide cases assigned to him. *See* GUIDE TO JUDICIARY POLICIES AND PROCEDURES, Vol. II, ch. I, at I–1 (Canon 1 of the Code of Conduct for United States Judges; *id.* at I–4, Canon 3, A. (2)); *Bradley v. Sch. Bd.*, 324 F.Supp. 439, 448–49 (E.D.Va.1971). *See also McBryde v. United States*, 299 F.3d 1357, 1369–70 (Fed.Cir. 2002) (Newman, J., dissenting). Therefore, those actions cannot form the basis for recusal.

■ The fact that the undersigned has been required to "defend[ ] his authority against the actions of assorted lawyers, bureaucrats, and colleagues," *id.* at 1369, does not provide a reason for recusal. The law is settled that ordinarily personal attacks on a judge do not require the judge's recusal, even in those instances when the person seeking recusal is a party and is the one who mounted the attacks. *See, e.g. United States v. Olander*, 584 F.2d 876, 887 (9th Cir.1978), *vacated on other grounds*, 443 U.S. 914, 99 S.Ct. 3104, 61 L.Ed.2d 878 (1979); *United States v. Bray*, 546 F.2d 851, 858 (10th Cir.1976). *See also United States v. Marshall*, 77 F.Supp.2d 764, 767–68 (N.D.Tex.1999). No exception to the general rule exists here.

■ Nor does the court consider that knowledge the court has through papers, records, and personnel in the office of the clerk of court require recusal. Many of the documents on which the court based recitations of fact in the May 28, 2002, memorandum are documents found within

the office of the clerk of this court but which are not a part of the filed papers in this case. Some of those documents originally were filed but later were stricken. Others are items that the clerk kept in a separate file in the clerk's office apparently for the purpose of having a record of events pertaining to the clerk's failure to comply with the investment order.[7] Part of the information upon which the court relied in the recitations of fact in the May 28 memorandum concerning the direct assignment by Ms. Doherty of number 3:96–CV–1870 to Judge Buchmeyer was obtained verbally by the undersigned from deputy clerks. The undersigned does not consider that recusal is required by his knowledge of any of the things mentioned in this paragraph. Rather, the court considers that all that knowledge was acquired by the undersigned in his judicial capacity and as a part of his monitoring and handling of this case.

■ However, recusal is appropriate for another reason. In footnote 3, at pages 9–10 of this memorandum, the court mentions information the court has about communications between Mrs. Torres and Mr. Branson's office. That information was obtained through the work of an attorney representing the undersigned in connection with proceedings before an administrative committee appointed by Judge Politz. While the information is unlikely to have any relevance to Grecia's claim against United States of America, there is a possibility that, if Rule 60(b) relief is granted, an attorney properly representing the interests of Grecia would assert claims against Branson in this case. If that were to occur, the information likely would have relevance to issues in the case. Thus, there is a prospect that the information

7. So that the parties will be aware of pertinent items in the clerk's office that are not now on file in the papers of this case, the court is causing to be filed in this case an appendix to this order that contains copies of those items.

might be knowledge within the scope of 28 U.S.C. § 455(b)(1), which directs that a judge shall disqualify himself if he has personal knowledge of disputed evidentiary facts concerning the proceeding. Therefore, the undersigned has concluded that he should recuse.

### IV.

#### *Reassignment of the Case*

Under normal circumstances, upon recusal the case would be reassigned by random draw to another district judge in the Northern District. However, such a reassignment procedure might well be unacceptable in this case for reasons similar to those given in *Hagan.* 77 F.Supp.2d at 783. An added concern in this case is that all the Dallas Division district judges who were on the Bench in 1995, and the other district judge in the Fort Worth Division, encouraged Judge Buchmeyer to make the unlawful reassignment order Judge Buchmeyer issued in *Torres* in 1995, with the result that each of those judges would be disqualified from presiding over this case. Bearing in mind that Fifth Circuit law prohibits the undersigned, as well as any other judge who would be disqualified from presiding, from selecting the judge to whom the case will be reassigned, *McCuin v. Texas Power & Light Co.,* 714 F.2d 1255, 1261 (5th Cir.1983), the court has concluded, as it did in *Hagan,* that the solution might well lie in the provisions of 28 U.S.C. § 292(b), which reads:

> (b) The chief judge of a circuit may, in the public interest, designate and assign temporarily any district judge of the circuit to hold a district court in any district within the circuit.

### V.

#### *ORDER*

The undersigned hereby recuses from presiding over this action, as consolidated, and hereby requests that the Honorable Carolyn Dineen King, Chief Judge of the United States Court of Appeals for the Fifth Circuit, designate and temporarily assign a district judge of this circuit to preside over this action, as consolidated, as authorized by 28 U.S.C. § 292(b).

The clerk of this court is directed to provide to Chief Judge King a certified copy of this memorandum and order, minus the appendix thereto, and of the Memorandum Opinion and Orders (Amended) signed by the court in this action on May 28, 2002.