# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1781

_____

United States of America,       *
                                           *

               Appellee,         *

                                           *    Appeal from the United States

       v.                          *    District Court for the

                                           *    Northern District of Iowa.

Julie Miller,                     *

                                           *

            Appellant.       *

_____

Submitted:  December 12, 2006
Filed:  March 26, 2007

_____

Before BYE, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Julie Miller pled guilty to perjury, and the district court[1] sentenced her to the statutory maximum term of 60 months' imprisonment. This sentence represented a substantial increase from the advisory guideline range of 18-24 months, and Miller appeals the sentence. We conclude that the district court gave cogent reasons demonstrating that the sentence is not unreasonable with regard to 18 U.S.C. § 3553(a), and we therefore affirm.

_____

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

## I.

In January 2001, Douglas DeBruin, Miller's boyfriend, killed Greg May, who had lived with Miller and DeBruin for several months. After the murder, Miller and DeBruin absconded with May's valuable collection of Civil War memorabilia. Police apprehended the couple in Arizona in April 2001, and Miller initially pled guilty to first-degree theft in Iowa state court.

In a later federal case, Miller pled guilty to interstate transportation of stolen property. At sentencing in the stolen property case, Miller testified that she did not know what had happened to May's body and that her role in covering up the murder was minimal. The district court found that Miller had "a role" in "disposing of the body" and "concealing the crime," and considered those facts at sentencing. The court imposed a sentence of 37 months' imprisonment, an increase from the applicable guidelines range of 12-18 months.

In April 2004, DeBruin was tried for May's murder in state court. *See State v. DeBruin*, 725 N.W.2d 658, 2006 WL 3017852 (Iowa App. 2006). After the state granted Miller immunity, she agreed to testify against DeBruin. Miller testified that she witnessed DeBruin kill May, and then helped him dispose of the body. (R. Doc. 19, at 24-30). She explained that she assisted DeBruin in dragging May's body downstairs to the basement laundry room, which had been lined in plastic in preparation for the murder. After placing May's body on a washing machine, Miller participated in draining May's body of blood and dismembering it. DeBruin used a chainsaw, while Miller employed a knife. Miller testified that she also drove May's car from their home in Bellevue, Iowa, to Dubuque, Iowa, in order to conceal May's death. She assisted DeBruin in disposing of May's dismembered remains, and was with DeBruin when he encased May's severed head in a bucket of concrete and later when he left it in a pothole at a truck stop. (Appellant's App. 20).

Based on the contradictions between Miller's testimony at DeBruin's trial and her prior testimony in the stolen property case, the government obtained an indictment charging her with perjury. The indictment alleged that Miller gave false testimony in the earlier case by claiming no knowledge of what happened to May's body after the murder, when in fact she assisted DeBruin "in dismembering [May's] body with a chain saw, dumping his torso into the Mississippi River, throwing his limbs in a ravine, and submerging his head in a bucket of cement which the two later left behind a truck stop in Missouri." (R. Doc. 3, at 2).

Miller pled guilty, and the district court sentenced her to the statutory maximum term of 60 months' imprisonment, which represented a nine-level increase above the advisory guideline range. In justifying the sentence, the district court found that Miller "made numerous false material statements under oath repeatedly to the Court in order to get a lower sentence" in the stolen property case, and "that she repeatedly made numerous false material statements to law enforcement in order to protect herself and her accomplice." (Statement of Reasons at 4).

II.

In her brief on appeal, Miller challenges her sentence on two grounds. First, she argues that the district court failed to follow the post-*Booker* sentencing procedure outlined in *United States v. Haack*, 403 F.3d 997 (8th Cir. 2005). Second, she argues that her sentence is unreasonable with regard to 18 U.S.C. § 3553(a), because the bases for the district court's decision do not justify the sentence and are not supported by the record.

As to the first ground, Miller argues that the district court improperly joined consideration of the guidelines factors warranting a *departure* with the statutory sentencing factors warranting a *variance* from the advisory guidelines range. *See* 18 U.S.C. § 3553(a). *Haack* directs that the district court ordinarily should determine

first the appropriate guideline range, then decide if the guidelines permit a traditional departure, and finally determine whether the § 3553(a) factors justify a variance from this "guidelines sentence." 403 F.3d at 1002-03. The sentencing transcript reveals that the district court seemed to fuse the second and third parts of this inquiry, treating "departure" and "variance" as synonymous. After stating its desire to "depart upward under [USSG §] 5K2.0," the district court noted that "a sentence within the advisory guideline range would not satisfy the statutory factors at 18 U.S.C. § 3553(a)," and sentenced Miller to the statutory maximum. (S. Tr. II, at 71). The advisory guideline range, including any guideline departures, remains the "critical starting point" after *Booker*, *United States v. Mashek*, 406 F.3d 1012, 1016 n.4 (8th Cir. 2005), and the district court's apparent conflation of departure considerations and variance analysis was error.

At oral argument, however, Miller's counsel conceded that two recent decisions of this court apply harmless error analysis to similar procedural mistakes at sentencing. *See United States v. Zeigler*, 463 F.3d 814, 818 (8th Cir. 2006); *United States v. Hodge*, 469 F.3d 749, 756 (8th Cir. 2006). In *Zeigler*, we affirmed the sentence imposed by a district court sentence even though it was unclear whether the court had effected an upward departure under the guidelines or varied from the guidelines based on § 3553(a). *Zeigler*, 463 F.3d at 818. Because the defendant "failed to establish that his ultimate sentence [was] unreasonable," the district court's procedural error proved harmless. *Id.* In light of this precedent, Miller now acknowledges that the district court's procedural error would be harmless, if her ultimate sentence was not unreasonable. *Cf. Hodge*, 469 F.3d at 756 ("Although the district court's failure to consider departures before considering the § 3553(a) factors is subject to harmless error analysis and would generally be harmless to the Government in this situation, it is not harmless here where the Government challenges the reasonableness of the ultimate sentence.") (citation omitted).

In determining whether a sentence is unreasonable with regard to § 3553(a) after *Booker*, we have adopted a proportionality principle. According to *Booker*, the reasonableness standard was "intended to further the statutory objectives of 'honesty,' 'uniformity,' and 'proportionality' in sentencing, and to help in avoiding excessive sentencing disparities." *United States v. Maloney*, 466 F.3d 663, 668 (8th Cir. 2006) (quoting *Booker*, 543 U.S. at 264). We have therefore viewed the advisory guidelines as a benchmark from which to measure potential disparities, *id.*, and concluded that "the further the district court varies from the presumptively reasonable guideline range, the more compelling the justification based on the § 3553(a) factors must be." *United States v. Bryant*, 446 F.3d 1317, 1319 (8th Cir. 2006); *see also United States v. Claiborne*, 439 F.3d 479, 481 (8th Cir. 2006) ("How compelling that justification must be is proportional to the extent of the difference between the advisory range and the sentence imposed."), *cert. granted*, 127 S. Ct. 551 (2006). The Supreme Court is presently considering in *Claiborne* whether this approach is consistent with *Booker*, but in the meantime, we of course apply our governing precedent.

In this case, the district court's sentence effected a nine-level increase from an advisory range of 18-24 months to the statutory maximum sentence of 60 months. This is a substantial deviation from the advisory benchmark, but we are persuaded that it is justified here by exceptional circumstances. Indeed, in the realm of perjury convictions, this case is almost *sui generis*. We do not believe the district court's imposition of a 60-month term on these facts will lead to excessive sentence disparities among "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The nature and circumstances of Miller's perjury offense are undoubtedly aggravating. *See* 18 U.S.C. § 3553(a)(1). While Miller maintained during her prosecution for interstate transportation of property stolen from Greg May that she did not know what had happened to May's body, the evidence in the perjury case painted a dramatically different picture. The district court found that Miller assisted DeBruin

in dragging May's body to a laundry room that had been lined with plastic, lifting the body on to a washing machine, draining blood from the body, systematically dismembering the body, wrapping the body parts in plastic, and loading the body parts into DeBruin's vehicle. The court found that Miller assisted in disposing of May's body by leaving the torso in the Mississippi River, abandoning his arms and legs in a roadside ditch in Iowa, and placing May's dismembered head – embedded in a bucket of wet cement – in a pothole in the parking lot of a Missouri truck stop. The court further observed that Miller drove May's car away from his residence to Dubuque, Iowa, and then to Aurora, Illinois, to conceal May's death and to give DeBruin and her time to flee the scene of the crime. (T. Tr. 384-88; Statement of Reasons at 4).

The district court concluded that Miller's perjury in the stolen property case "very seriously" obstructed justice, and had "much more serious implications than the usual perjury offense." (S. Tr. II, at 72; Statement of Reasons at 4). The court cited the consequences that "evidence that could have been preserved to prove the murder dissipated with the passage of time, and law enforcement was unable to recover body parts and other evidence of murder that could have been located if Miller had been truthful at her original sentencing hearing." (Statement of Reasons at 4). The court found that not only did Miller's perjury "impede the administration of justice," securing for her a lower sentence in the stolen property case and resulting in the dissipation of evidence, "but her lies prolonged the suffering and the anguish of the victim's family who had been seeking answers about the victim's death and the location of his body so he could be properly buried." (*Id.*). With respect to the history and characteristics of the defendant, *see* § 3553(a)(1), the court found that Miller is a "very dangerous person," and that she had received no criminal sanctions for her role following May's death – which the court characterized as an "accessory after the

-6-

fact to a murder" – other than some portion of a 19-month upward departure in the stolen property case.[2] (*Id.*).

Miller argues that the record does not support the district court's finding that Miller's perjury enabled her to escape greater punishment in the stolen property case. At the sentencing hearing in the earlier proceeding, the district court stated that in departing upward from the guideline range, it had "considered that [Miller] did have a role in disposing of the body, concealing the crime, and concealing the crime for which she was convicted." (S. Tr. I, at 136). The first upward departure, however, was also premised on other factors, namely, that the stolen property had significant historical value, and that some of the stolen articles were family keepsakes not capable of valuation or replacement. (*Id.*). Given the disturbing truth about Miller's deep involvement in dismembering May's body and concealing the murder, we see no basis to reject the statement of the district judge, who conducted both sentencing proceedings, that false testimony from Miller in the earlier proceeding produced a shorter sentence in that case.

Miller also contends that the record does not support the district court's finding that Miller is a "very dangerous person," because other evidence presented by Miller suggested that she was a non-violent person during most of her life. We review the district court's finding of fact for clear error. *United States v. Willis*, 433 F.3d 634, 636 (8th Cir. 2006). While the court did not find that Miller participated directly in the murder of Greg May, the absence of such a finding did not preclude a

---

[2]While the district court did not elaborate on its statement that Miller was an accessory after the fact to the murder of Greg May, or determine Miller's advisory guideline sentence on that basis, we note that the sentencing guidelines provide for an offense level of 30 for a defendant whose relevant conduct involves serving as an accessory after the fact to a first degree murder. USSG §§ 2X3.1(a)(1), (2), 2A1.1(a), 1B1.3. An offense level of 30 and criminal history category of II would provide for a term of imprisonment well in excess of 60 months. *Id.*, Ch. 5, Pt. A.

determination that Miller was very dangerous. Miller assisted in draining a corpse of blood and dismembering it (she with a knife, her accomplice with a chainsaw), thus making it more difficult to detect and resolve a violent crime, and the district court found that "[n]o one could engage in the type of conduct that she engaged in without posing a serious risk to the public." (S. Tr. II, at 72). Other aspects of Miller's history may reflect a non-violent character during other phases of her life, but in view of Miller's conduct in the aftermath of May's murder, we are not left with the definite and firm conviction that the district court made a mistake in finding that Miller was very dangerous.

Given the exceptional facts of this perjury case, we conclude that the sentence imposed was not unreasonable with regard to § 3553(a). Accordingly, the judgment of the district court is affirmed.

_____