# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-1518

_____

United States of America,

           Appellee,

v.

Kamron Dehghani, also known as
KED64012, also known as
KEDZLAWN, also known as
LILKELLIINMO,

           Appellant.

\*
\*
\*
\*
\* Appeal from the United States District
\* Court for the
\* Western District of Missouri.
\*
\*
\*
\*
\*
\*

_____

Submitted: October 14, 2008
Filed:  December 22, 2008

_____

Before MELLOY, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a jury trial, Kamron Dehghani was convicted of four counts of various child pornography offenses.  He appeals, arguing that the district court[1] erred in

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

denying his motion to suppress, abused its discretion in failing to recuse at sentencing, and abused its discretion in imposing a procedurally flawed and substantively unreasonable sentence. For the reasons discussed below, we affirm.

## I.    BACKGROUND

In January 2006, a Kansas City, Missouri police investigation of child pornography-related messages posted to web sites led to an internet account registered at an address in Belton, Missouri. Detectives Maggie McGuire and Brian Roach visited the Belton address, which belonged to Kamron Dehghani and his wife. During the visit, with Dehghani's permission, Roach removed a computer from the residence. After a forensic evaluation of the computer revealed child pornography, the detectives contacted Dehghani to arrange an interview. Dehghani originally declined to meet with the detectives, claiming that he suffered anxiety problems when traveling long distances. After the detectives agreed to conduct the interview at a police station close to his residence and at a time when his wife could drive him, Dehghani agreed to be interviewed.

The detectives' interview with Dehghani began around 6:30 p.m. and ended approximately five and a half hours later. At the beginning of the interview, McGuire read Dehghani his *Miranda*[2] rights from a form. Dehghani read the form back to McGuire and signed it. Dehghani initially denied having any involvement with child pornography. At one point during the interview, Roach slammed his hand on the table and, in a loud tone of voice, told Dehghani that if he continued denying involvement, he would be arrested. Roach then told Dehghani he needed to get ready for the arrest by taking everything out of his pockets and removing his belt and shoelaces. As Dehghani emptied his pockets, he told the detectives that they were correct when they earlier suggested that some people might be curious about child pornography because

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

they had been abuse victims themselves. Dehghani stated that he was molested by his father and began to cry. After the detectives resumed questioning, Dehghani continued to deny his involvement with child pornography until the detectives confronted him with evidence from his computer, at which point he confessed. The detectives then prepared a statement reflecting Dehghani's answers to their questions, which Dehghani signed, and they allowed Dehghani to go home.

A federal grand jury indicted Dehghani on charges of publishing a notice to exchange child pornography over the internet, 18 U.S.C. § 2251(d), attempting to receive child pornography, 18 U.S.C. § 2252(a)(2), attempting to distribute child pornography, 18 U.S.C. § 2252(a)(2), and possession of child pornography, 18 U.S.C. § 2252(a)(4). Before trial, Dehghani filed a motion to suppress his statements from the interview. The district court found that Dehghani knowingly waived his *Miranda* rights and made his statements voluntarily. A jury found Dehghani guilty on all counts of the indictment.

While in custody awaiting sentencing before Judge Fenner, Dehghani attempted to send a letter to a newspaper that contained a threat to the judge's life. The letter alluded to the location of the judge's home and referred to his wife and stepson. The letter also included threats to assassinate President Bush, to plant bombs on city buses, and to poison the city's drinking water. Dehghani also hatched an escape plot with another inmate in which they would use a sharpened toothbrush to subdue a female guard. After the threats and the escape plot, including the sharpened toothbrush, were discovered, Dehghani filed a motion seeking the recusal of Judge Fenner, arguing that he would be biased because of Dehghani's threat to the judge. Judge Fenner denied Dehghani's recusal motion, explaining that Dehghani's threat against him was an attempt to manipulate the criminal justice system and that Dehghani had no realistic ability to carry out the threat.

At sentencing, the district court calculated a total offense level of 39, including a two-level enhancement for obstruction of justice under United States Sentencing Guidelines § 3C1.1, and a criminal history category of I, resulting in an advisory sentencing guidelines range of 262 to 327 months' imprisonment. The district court then sentenced Dehghani to 432 months' imprisonment after finding that the advisory guidelines range did not fully account for the scope of Dehghani's criminal conduct or the extent of his attempts to obstruct justice. Dehghani appeals, arguing that his statement to the detectives was involuntary and should have been suppressed, that Judge Fenner should have recused himself, and that the sentence was procedurally flawed and substantively unreasonable.

## II.   DISCUSSION

We first address Dehghani's argument that the district court erred in denying his motion to suppress. Dehghani alleges that the detectives' coercive tactics overcame his will and that his confession was, therefore, involuntary. "We review the district court's factual findings for clear error and its conclusion regarding the voluntariness of a confession de novo." *United States v. Brave Heart*, 397 F.3d 1035, 1040-41 (8th Cir. 2005). A statement is involuntary if the totality of the circumstances show that "pressures exerted by the authorities overwhelmed the defendant's will." *United States v. Martin*, 369 F.3d 1046, 1055 (8th Cir. 2004). However, an interrogation of a suspect will always involve some pressure "because its purpose is to elicit a confession." *Id.* A lengthy interrogation, a raised voice or deception do not render a confession involuntary "unless the overall impact of the interrogation caused the defendant's will to be overborne." *Id.*

In support of his argument that his statement was involuntary, Dehghani contends that the detectives overcame his will by physically intimidating him, promising that he would not be jailed if he confessed, and questioning him after he had an emotional breakdown. The magistrate judge's report and recommendation,

adopted by the district court, made several factual findings that rebut Dehghani's claims.[3] The court found that although Roach slammed his hand on the table and raised his voice, he did not physically intimidate Dehghani by, for example, raising his fists or using profanity. The court also found that the detectives never told Dehghani he would not be arrested if he confessed. The court additionally found that although Dehghani cried, he did not cry uncontrollably or appear disoriented. He did not confess immediately after crying; instead, he continued to deny involvement with child pornography until the detectives confronted him with evidence from his computer. None of these findings of fact are clearly erroneous in light of the detectives' testimony. *See United States v. Hines*, 387 F.3d 690, 695 (8th Cir. 2004) (explaining that a trial judge's decision to credit testimony of witnesses who tell coherent and facially plausible stories that are not contradicted by extrinsic evidence "can virtually never be clear error"). Based on these findings, we find no error in the district court's conclusion that, considering the totality of the circumstances, the detectives did not overcome Dehghani's will. *See United States v. Santos-Garcia*, 313 F.3d 1073, 1079 (8th Cir. 2002) (noting that raised voices and promises of leniency do not render a confession involuntary); *cf. Gingras v. Weber*, 543 F.3d 1001, 1003 (8th Cir. 2008) (finding no involuntary confession where defendant had stopped crying by the time he confessed).

Furthermore, there is no evidence that Dehghani was particularly susceptible to the detectives' pressure. Dehghani appeared to be of at least average intelligence because his answers to questions were coherent, if not always truthful, and he displayed some understanding of the internet and file-sharing programs. *See, e.g.*, *United States v. LeBrun*, 363 F.3d 715, 726 (8th Cir. 2004) (en banc) (noting that when a defendant possesses at least "average intelligence," his inculpatory statements are less likely to be compelled). Moreover, the court found that Dehghani had at least

---

[3]The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

nine years of education, an amount that does not render his confession involuntary per se. *See United States v. Makes Room*, 49 F.3d 410, 415 (8th Cir. 1995) (explaining that a defendant's eighth grade education, among other factors, did not make his confession involuntary where he clearly understood his rights). Additionally, although Dehghani argues that he was affected by certain medications he had taken on the day of the interview, the court found that there was no evidence that Dehghani's medication impaired him in any way. This finding is not clearly erroneous in light of the detectives' testimony that Dehghani did not appear impaired and that he gave clear, responsive answers to the detectives' questions. *See Martin*, 369 F.3d at 1056 (finding no clear error in the district court's determination that the defendant did not suffer mental impairment as a result of medication). Finally, the interrogation lasted approximately five and a half hours, which is not sufficient to render the confession involuntary per se. *See Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir. 1993) (questioning of a suspect for six to seven hours was not "per se unconstitutionally coercive").

Other factors also weigh in favor of a finding that Dehghani's confession was voluntary. First, the detectives advised Dehghani of his *Miranda* rights orally and in writing. Dehghani waived those rights orally and in writing, and he never invoked any of his *Miranda* rights. *See United States v. Mendoza*, 85 F.3d 1347, 1350 (8th Cir. 1996). In addition, the interview was conducted at a time and location convenient to Dehghani. *See id.* Considering the totality of the circumstances, we find that the district court did not err in denying the motion to suppress because the detectives' actions did not overcome Dehghani's will and Dehghani confessed voluntarily.

We next address Dehghani's contention that the district court abused its discretion in denying his motion to recuse. We review the denial of a motion to recuse for abuse of discretion. *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) (en banc). A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The question is "whether the judge's

impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *Moran*, 296 F.3d at 648. Because a judge is presumed to be impartial, "the party seeking disqualification bears the substantial burden of proving otherwise." *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006).

In denying the motion to recuse, Judge Fenner concluded that Dehghani's threat against him was an effort to manipulate the criminal justice system by attempting to obtain a different judge for sentencing. Judge Fenner explained that Dehghani did not "have the capacity by any stretch of the imagination to carry out" the threat against him. However, the court did find that Dehghani's threats against jail personnel were serious and recommended that Dehghani's transfer to federal custody be expedited. During sentencing, the court increased Dehghani's advisory guidelines range and increased his sentence beyond that range partly because of Dehghani's efforts to obstruct justice by threatening the judge, jail personnel and others. Dehghani contends that an average person would question the impartiality of the court because his threat against Judge Fenner appeared credible, the court's findings regarding the seriousness of his various threats were inconsistent, and his ultimate sentence was based on the threat that formed the basis for the recusal request.

First, Judge Fenner's finding that the threat against him was an attempt to manipulate the criminal justice system is amply supported by the record. Judges are not required to recuse themselves any time they are threatened. *See United States v. Gamboa*, 439 F.3d 796, 817 (8th Cir. 2006). Dehghani's threat against the judge was contained in the same letter as threats to assassinate President Bush, to plant bombs on city buses, and to poison the city's water supply. Judge Fenner did not consider the threat against him serious enough to report it to any law enforcement agencies or to request additional security for his protection. Moreover, Dehghani was in custody at the time he made the threat. This empty threat does not require a judge's recusal. *See United States v. Holland*, 519 F.3d 909, 916-17 (9th Cir. 2008) (finding no error

where the district court did not recuse itself because defendant had a history of making empty threats against judges, lawyers and the president). Dehghani relies on *United States v. Greenspan*, 26 F.3d 1001 (10th Cir. 1994), in support of his recusal argument, but in that case, the threats were serious enough to prompt the FBI to launch an investigation into the defendant's conspiracy to kill the trial judge. *Id.* at 1005. The conspiracy in *Greenspan* spanned several states and included a number of persons who contributed money for the hiring of a hit man. *Id.* Nothing in the record supports a finding that Dehghani's threat against Judge Fenner was similarly credible.

Second, Judge Fenner's finding that Dehghani's threats against jail personnel were serious does not conflict with his finding that the threat against him was not. While in jail, Dehghani had fashioned a toothbrush into a weapon. Dehghani clearly had the ability to harm a guard in his immediate vicinity with such a weapon, whereas he had no ability to carry out his threat against the judge while in custody. The fact that Dehghani knew some details about Judge Fenner and his family, including the general location of his home, does not alter the conclusion that Dehghani had no ability to carry out the threat against him. Thus, there is no inherent contradiction between the two findings, and a fully-informed average person would not conclude that Dehghani's serious threats against jail personnel showed that his threat against Judge Fenner was also credible.

Furthermore, Judge Fenner did not increase Dehghani's advisory guidelines range for obstruction of justice under § 3C1.1 because of the seriousness of the threat against him but rather because of the seriousness of Dehghani's attempts to manipulate the criminal justice system. An empty death threat can nevertheless be a credible attempt to manipulate the system. *See Holland*, 519 F.3d at 916. Moreover, the court's demeanor and decisions during sentencing did not evidence "deep-seated favoritism or antagonism that would make fair judgment impossible." *Gamboa*, 439 F.3d at 817. Judge Fenner acknowledged Dehghani's various personal problems and demonstrated sympathy for Dehghani's family, and he gave reasons for his sentencing

decisions that the record fully supported.  *See id.*  We conclude that an average observer who was informed of all of the facts in this case would not reasonably question the court's impartiality.  Therefore, the district court did not abuse its discretion in denying Dehghani's motion to recuse.

Finally, Dehghani challenges his sentence, arguing that it was both procedurally flawed and substantively unreasonable.  First, we consider whether the district court committed any procedural error.  *Gall v. United States*, 552 U.S. ---, 128 S. Ct. 586, 597 (2007).  Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  *Id.*

Dehghani contends that the district court erred procedurally by failing to consider the § 3553(a) factors and by failing to sufficiently explain the basis for its chosen sentence.  Although the 432-month sentence imposed by the district court was substantially greater than the advisory guidelines range, we disagree with Dehghani's arguments that it was procedurally flawed.[4]  The record demonstrates that the district court considered the § 3553(a) factors, specifically mentioning the need to deter criminal conduct, to promote respect for the law, and to protect the public from Dehghani's criminal activity. *See United States v. Walker*, 439 F.3d 890, 892 (8th Cir. 2006) (explaining that district courts need not discuss each § 3553(a) factor in detail so long as it is clear that they were considered).  Moreover, the district court adequately explained its chosen sentence, concluding that the advisory guidelines

---

[4]Although the district court used the term "departure" when sentencing Dehghani, the court's considerations clearly demonstrate that it actually imposed a variance under the § 3553(a) factors.  However, where the ultimate sentence is reasonable, this type of conflation is harmless error. *See United States v. Miller*, 479 F.3d 984, 986 (8th Cir. 2007), *cert. denied*, 552 U.S. ---, 128 S. Ct. 869 (2008).

range did not sufficiently account for the scope of Dehghani's criminal conduct or his obstructive behavior while awaiting sentencing. The court found that Dehghani was obsessed with child pornography, exposed his daughters to child pornography, expressed a desire to have sexual relations with children, and forced a minor to perform oral sex. Further, the district court considered Dehghani's multiple attempts to obstruct justice, such as making baseless threats, sending a letter containing a white powdery substance, blaming others for his actions, hatching an escape plot, forging signatures on motions filed with the court, and lying under oath multiple times. The court properly considered these issues in evaluating "the nature and circumstances of the offense and history and characteristics of the defendant" under § 3553(a). Thus, because the district court considered the § 3553(a) factors and adequately explained the basis for its sentence, including its decision to impose a sentence above the advisory guidelines range, we find no procedural error.

We next address Dehghani's contention that his sentence was substantively unreasonable because the district court allegedly failed to consider certain mitigating factors.[5] We review the substantive reasonableness of a sentence for abuse of discretion. *Gall*, 128 S. Ct. at 597. A sentence outside of the advisory guidelines range is not presumptively unreasonable. *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir. 2008). The record indicates that the district court, after hearing from Dehghani, his mother and his lawyer, considered Dehghani's age, mental issues and childhood abuse. However, the court specifically found that those circumstances did not outweigh the seriousness of Dehghani's conduct. Because the sentencing judge is in a superior position to weigh the relevant factors under § 3553(a), the fact that we might reasonably conclude "that a different sentence was appropriate is insufficient

---

[5]Dehghani also argues that the advisory guidelines themselves are substantively unreasonable because they violate the parsimony principle of § 3553(a) by creating unduly harsh sentencing ranges for child pornography offenses. This court has rejected that argument. *United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008).

to justify reversal of the district court." *Gall*, 128 S. Ct. at 597. We conclude that the district court did not abuse its discretion by sentencing Dehghani to 432 months' imprisonment.

## III.  CONCLUSION

For the foregoing reasons, we affirm Dehghani's conviction and sentence.

_____