# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3205

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| | * | |
| Robert B. Beale, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 10, 2009
Filed: July 23, 2009

_____

Before SMITH and SHEPHERD, Circuit Judges, and LIMBAUGH,[1] District Judge.

SHEPHERD, Circuit Judge.

Robert B. Beale was convicted on five counts of tax evasion in violation of 26 U.S.C. § 7201, one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and one count of failure to appear at trial in violation of 18 U.S.C. § 3146(a)(1). Beale appeals on the grounds that there was insufficient evidence to support his conviction for tax evasion, the district court judge should have recused

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

herself because his efforts to intimidate her compromised her impartiality, he was denied adequate resources while in jail to prepare his pro se defense in violation of due process, and his sentence of 134 months imprisonment was unreasonable. We affirm.

I.

From 2000 to 2004, Beale used his position as majority shareholder, chief executive officer, and chairman of the board of directors of Comtrol Corporation ("Comtrol") to conceal more than $5 million in income from the Internal Revenue Service ("IRS") and the Minnesota Department of Revenue ("MDR"). Beale founded Comtrol, a computer technology company, after graduating from the Massachusetts Institute of Technology with an engineering degree. Comtrol was very successful, and Beale became a millionaire.

Beale has been involved in the so-called tax-protest movement. "Tax protestors offer a myriad number of arguments to illustrate the unconstitutionality, illegimacy [sic], illvalidity [sic], or narrowness of the Internal Revenue Code." (Appellant's Br. 22.) As noted in Beale's brief, "[u]nfortunately, many of these [arguments] are written in archaic, turgid prose and are liberally laced with nineteenth and twentieth century U.S. Supreme Court decisions which may have little relevance to the topic at hand." (Id.) At their core, Beale's various philosophic, statutory, and constitutional arguments revolve around his belief that citizens of the 50 states and Native Americans are immune from federal income taxation unless they are employees of the federal government or freed slaves.

The events giving rise to the instant indictment began in 2000. Until September of 2000, Beale was paid as an employee of Comtrol. Around this time, he instructed Eileen Johnson, an employee in Comtrol's payroll department, to stop paying him as an employee of Comtrol. Thenceforth, Beale wanted to be paid as an independent

consultant instead of an employee so that he could avoid income tax withholding. Beale directed Johnson to designate retroactively the payments he had received as an employee during the first part of 2000 as payments to an independent consultant. This was done so that Beale could recoup the income tax that had been withheld from his salary.

Along with Lee D. Stagni, the president and chief operating officer of Comtrol, Beale set up a shell company called Chayil that was to provide "management services" to Comtrol. Stagni drafted a services contract in which Chayil was to stand in Beale's shoes and perform the functions of board chairman and CEO for Comtrol. Beale and Stagni completed this contract in November 2000 and then backdated it to January 1, 2000, the point at which the modified payroll records would show that Comtrol ceased paying Beale as an employee.

Beale and Stagni then submitted an invoice for Chayil for management services rendered in October and November 2000. When Lee Aide, an employee in charge of Comtrol's cash management, confirmed with Beale by email that payment had been sent to Chayil, Comtrol's chief financial officer Gary Kanowitz informed Aide that in the future he should verbally confirm payments with Beale rather than by email or in writing. Beale and Stagni then submitted invoices for Chayil dating back to January 1, 2000. To complete the appearance that Chayil had been rendering services to Comtrol for the entire year, Beale wrote Comtrol a check for $571,574.87, the amount paid in 2000 to Beale by Comtrol before Johnson changed the payroll records, and then Comtrol paid the same amount to Chayil.

Johnson testified that, although she did not object to this arrangement at first, she became concerned in January 2001 when Kanowitz and Stagni directed her not to issue a Form 1099 to the IRS to report sums paid to Beale through payments to Chayil. Johnson believed that a Form 1099 should be sent to the IRS because the payments to Beale, even though made through Chayil, were salary that would have

been reported to the IRS through a Form W-2 if Beale had not changed his status from employee to independent consultant. Johnson understood this to be an attempt by Beale to hide his income from the IRS. Comtrol paid Beale approximately $650,000 in 2000. This arrangement continued until 2004, by which time Comtrol had paid Beale approximately $5,600,000 through Chayil. No part of this sum was reported to the MDR or the IRS.

Before they began inquiring into the Chayil arrangement, state and federal authorities were investigating other gaps in Beale's tax history. In June 2001, the IRS placed a lien on Beale's home in Collier County, Florida, for unpaid taxes from 1992 to 1995. To escape the lien on his home, Beale forged a "Certificate of Release of Federal Tax Lien" and filed it with the Collier County Clerk. Convinced by the counterfeit certificate, the county clerk released the lien. Another counterfeit certificate to obtain release of a tax lien on Beale's home in Minnesota was found on Beale's laptop computer after his arrest. This certificate had not been filed.

In March of 2002, the MDR instituted collection efforts against Beale for unpaid taxes for 1998. This collection action stemmed from Beale's sale of a television station in Minnesota in 1998, a transaction in which he made several million dollars. Stating that he was a resident of Florida who was exempt from the Minnesota capital gains tax, Beale refused to pay the taxes owed to Minnesota.

After Beale failed to pay, the MDR sent Comtrol a Notice of Intent to Levy Wages and a Third Party Levy for any property of Beale's held by Comtrol. Comtrol responded that Beale was not one of its employees and directed the MDR to Chayil. In response to the MDR's subsequent queries about Chayil, Stagni drafted a document purporting to describe the management services provided by Chayil to Comtrol. Stagni then gave this document to Comtrol's outside counsel to give to MDR. Stagni also faxed a copy of the document to Beale and explained in a cover sheet to the fax

-4-

that Beale's name was not mentioned in the document and Chayil was described so as to make it appear that others besides Beale were working there.

Determining that Beale was hiding his Comtrol income, the MDR placed a lien on Beale's Minnesota home. To release the lien, Beale paid the taxes owed to the MDR with money loaned by Comtrol to Chayil. Beale then paid off this loan by increasing the amount of services billed by Chayil to Comtrol.

The MDR grew more suspicious and began investigating other aspects of Beale's income. MDR investigator Matt Schaefer contacted the IRS to inform them about Beale's effort to hide his Comtrol income from the government. In 2004, the IRS began investigating Beale. Over the next several months, Johnson and Aide provided the IRS with information about Beale and Stagni's activities at Comtrol.

In 2006, Beale and Stagni were indicted on five counts of tax evasion in violation of 26 U.S.C. § 7201 and one count of conspiracy to defraud the United States government in violation of 18 U.S.C. § 371. On August 14, 2006, the day scheduled for trial, Beale did not appear.[2] Beale was not apprehended for 14 months. While he was a fugitive, Beale transferred $100,000 from an account in Comtrol's name at the Banco Unione di Credito in Switzerland to a personal account at the same bank. He also wired $50,000 from his personal Swiss bank account to an account held in Chayil's name in Florida. The IRS seized the money wired to the Chayil account in Florida. Finally, after communications with Comtrol in August 2007, the Swiss bank refused to permit Beale to transfer $700,000 from Comtrol's account to his personal account. While a fugitive, Beale was indicted with an additional count of failure to appear at trial in violation of 18 U.S.C. § 3146(a)(1).

Beale was apprehended in Orlando, Florida, in November 2007. After his

---

[2]Stagni appeared, went to trial, and was convicted on all six counts. He was sentenced to 43 months imprisonment and did not appeal.

apprehension, Beale elected to represent himself. After determining that he knowingly and voluntarily waived his Sixth Amendment right to counsel, the district court appointed stand-by counsel to assist Beale. Beale later complained that he was being denied adequate resources to prepare his defense, specifically a private cell phone, a more modern computer, and personal contact with visitors. Beale enjoyed the right to make outgoing telephone calls, unlimited contact with stand-by counsel, meetings with up to ten visitors in a video-monitored visitor area, access to a computer, and he received all the government's discovery and exhibits in both paper and electronic formats. The court denied Beale's motion for additional resources.

While in jail awaiting trial, Beale and several accomplices created a "Common Law Court/Venue," which they styled as "[our] one supreme court common-Law court for the de-jure Ramsey: the county: Minnesota: the land a superior court for the People, original jurisdiction under Almighty Yahweh exclusive jurisdiction in and for confederation-government United States of America." Complaint ¶ 3, United States v. Beale, et al., No. 0:08-cr-00210-RSW-JJK (D. Minn. Apr. 14, 2008). Beale's "Common Law Court" drafted a fake arrest warrant with the intention of having a "provost marshal" arrest the presiding district judge. Id. In recorded telephone conversations, Beale stated, "I want her to be intimidated" and "Once I take down [the presiding judge] no judge in the whole court will have anything to do with me." Id. at ¶ 13. Beale also proclaimed that God wanted him to "destroy the Judge. That Judge is evil. He wants me to get rid of her." Id. at ¶ 5. The district court judge refused Beale's request that she recuse herself after the machinations of his "Common Law Court" came to light.

After his conviction, Beale filed motions for a judgment of acquittal and a new trial. He sought acquittal on the ground that the government provided insufficient evidence to support his conviction because the sincerity of his disagreement with the tax laws prevented the jury from finding that he "willfully" violated the tax code. He based his new trial motion on the argument that he was too tired to represent himself

because he was awakened each morning at 5 o'clock. The district court denied both motions.

## II.

Beale's first challenge is that the government's evidence of his willfulness was insufficient to support his conviction for tax evasion under 26 U.S.C. § 7201. "This court reviews the sufficiency of the evidence supporting a conviction de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Farrell, 563 F.3d 364, 366 (8th Cir. 2009) (quotation omitted). "The elements of tax evasion are willfulness, the existence of a tax deficiency, and an affirmative act constituting evasion or attempted evasion of the tax." United States v. Marston, 517 F.3d 996, 999 n.2 (8th Cir. 2008). "The willfulness element 'requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty.'" United States v. Barker, 556 F.3d 682, 687 (8th Cir. 2009) (quoting Cheek v. United States, 498 U.S. 192, 201 (1991)). "However, where a defendant seeks to defeat a finding of willfulness through a 'good-faith belief that he was not violating any of the provisions of the tax laws . . .[,] the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue." Id. (quoting Cheek, 498 U.S. at 201-02).

Beale's sole argument is that the sincerity of his anti-tax beliefs prevents the government from proving that he willfully violated the tax laws. According to Beale's trial testimony, he became interested in the anti-tax movement in 2000 when he attended a seminar at Auburn University on tax law. After further inquiry into the area, Beale paid an attorney in California $25,000 to assess his tax situation. According to Beale, he learned from this consultation that the federal government is without the power to tax the income of individuals who live in the 50 states. Under

this view, there are "three kinds of citizens . . . the citizens of the fifty states, . . . the new U.S. citizens that were created by the Fourteenth Amendment [i.e. the freed slaves] and . . . [those living on] Indian reservations." (Appellant's Br. 29.) Beale contends that the federal government's power to tax the income of citizens is limited to citizens of the District of Columbia and the freed slaves who were awarded citizenship by the Fourteenth Amendment. He also concedes that employees of the federal government who are neither freed slaves nor residents of the District of Columbia are subject to federal income taxation. Beale claims to believe that this tripartite scheme of citizenship, in which citizens of the 50 states and residents of Indian reservations are beyond the reach of the federal taxing power, is "being intentionally hidden from people, including the employees of the government and the Courts[,] to prevent people from knowing the truth." (Id. at 30.)

Beale is not the first to attempt to escape his tax obligations with this type of argument, and his arguments fare as poorly as those of his predecessors. The Supreme Court has rejected the argument that disagreements with the philosophic or legal underpinnings of the Internal Revenue Code constitute good-faith mistakes about what duties the Code imposes on them. Cheek, 498 U.S. at 206 ("We do not believe that Congress contemplated that such a taxpayer, without risking criminal prosecution, could ignore the duties imposed upon him by the Internal Revenue Code . . . ."). Furthermore, Beale's interpretations of the federal tax statutes have been repeatedly rejected by the federal courts.[3] See United States v. Collorafi, 876 F.2d 303, 305-06

---

[3]For instance, Beale's argument that he is not a "person" subject to the tax laws as defined in 26 U.S.C. § 7343 was rejected in United States v. Rice, 659 F.2d 524, 528 (Former 5th Cir. 1981); his argument that under 26 U.S.C. § 3401 "employee" includes only federal wage earners was squarely dismissed in United States v. Latham, 754 F.2d 747, 750 (7th Cir. 1985) (stating that under section 3401(c) the argument that "the category of 'employee' does not include privately employed wage earners is a preposterous reading of the statute"); and, for the coup de grace, his scheme of United States citizenship, within which the federal government cannot tax the income of citizens of the several states unless they are federal employees or freed slaves, has

-8-

(2d. Cir. 1989) ("[P]roof that a defendant continued a tax practice that already had been held unlawful by a federal judge is strong circumstantial evidence of wrongful intent."). The government provided more than enough evidence to show that Beale knew his tax obligations and that he willfully evaded them. The premise of the Chayil scheme was to hide his income from the government, a fact that presupposes that Beale knew and understood what the tax laws required of him. His idiosyncratic views on our constitutional structure, whether sincere or not, are not good-faith mistakes about what the law is. They are disagreements about what the law should be. See United States v. Schiff, 801 F.2d 108, 112 (2d. Cir. 1986) (noting the difference between misunderstanding and disagreement). We affirm Beale's conviction on five counts of tax evasion in violation of section 7201.

### III.

Beale's next argument is that he is entitled to a new trial because the presiding district court judge did not recuse herself after learning of the attempt by Beale's "Common Law Court" to intimidate her through issuing a warrant for her arrest. Although there is some dispute as to whether Beale properly moved for recusal, the judge asked him at the beginning of the trial whether he wanted recusal, to which he responded, "by authority of the one Supreme Court in the original jurisdiction under the Lord Jesus Christ, and the law of God, I order that your bond be seized and I order that you recuse yourself from this case." (Appellant's Br. 41.) Regardless of whether Beale filed a motion for recusal in the technical sense, we think this comment sufficiently raised the issue to review for abuse of discretion instead of plain error. See United States v. Dehghani, 550 F.3d 716, 721 (8th Cir. 2008) ("We review the denial of a motion to recuse for abuse of discretion.").

---

been rejected time and again, see United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993) (per curiam); United States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992); United States v. Hilgeford, 7 F.3d 1340, 1342 (7th Cir. 1993).

The judge learned of the plot against her liberty three days before trial through a criminal complaint detailing the statements and actions of Beale's vigilante tribunal.[4] While in jail, Beale was recorded saying that "[i]f my plans work out . . . it will be a tremendous blessing, a tremendous blessing. God wants me to do this. This is what he wants me to do. He wants me to destroy the Judge. That Judge is evil. He wants me to get rid of her." Complaint ¶ 5, Beale, No. 0:08-cr-00210-RSW-JJK. He was also recorded stating that "[o]nce I take down [the presiding judge] no judge in the whole Court will have anything to do with me." Id. ¶ 13.

Recusal is required "in any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The question is whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." Dehghani, 550 F.3d at 721 (quotation omitted). "Because a judge is presumed to be impartial, the party seeking disqualification bears the substantial burden of proving otherwise." Id. (quotation omitted). Furthermore, defendants are not "permitted to use such a plot or threat as a judge-shopping device." In re Basciano, 542 F.3d 950, 957 (2d. Cir. 2008), cert. denied, 129 S. Ct. 1401 (2009).

Although Beale acknowledges that recusal is improper when a party has threatened a judge in an effort to manipulate the judicial system, he argues that this rule does not apply to him because the telephone conversations in which he made the threatening statements were secretly recorded. Thus, he cannot be said to have intended to manipulate the judicial process because he did not intend that the judge learn of his threats.

---

[4]Beale was subsequently indicted and found guilty on one count of conspiring to impede an officer in violation of 18 U.S.C. § 372 and one count of aiding and abetting the obstruction of justice in violation of 18 U.S.C. § 1503(a). He was then sentenced to 48 months imprisonment. United States v. Beale, et al., No. 0:08-cr-00210-RSW-JJK (D. Minn. Feb. 24, 2009).

Beale cites <u>United States v. Greenspan</u>, 26 F.3d 1001 (10th Cir. 1994), in support of this proposition.  In <u>Greenspan</u>, the court held that a trial judge should have recused himself when he learned from the Federal Bureau of Investigation that the defendant was involved in an alleged conspiracy to assassinate him.  <u>Id.</u> at 1006.  Although "threats or attempts to intimidate a judge will not ordinarily satisfy the requirements for disqualification . . .[,]" recusal was required because "[t]he judge learned of the alleged threat from the FBI, and there is nothing in the record to suggest the threat was a ruse by the defendant in an effort to obtain a different judge."  <u>Id.</u>

<u>Greenspan</u> might provide some support for Beale's argument if it were not for the fact that Beale and his colleagues on the "Common Law Court" intended to have a "provost marshal" serve their arrest warrant on the presiding judge.  Beale clearly intended the judge to learn of this threat when she was arrested by his "provost marshal."  The only thing he did not intend was that she would learn of his plot through the filing of a criminal complaint by the government.  Furthermore, Beale's intent to manipulate the judicial system was clearly expressed when he was recorded saying that after he had intimidated the presiding judge, "no judge in the whole Court will have anything to do with me."  Complaint ¶ 5, <u>Beale</u>, No. 0:08-cr-00210-RSW-JJK.  Remanding for a new trial with a different judge would be an undue reward for an attempt to cow the entire federal bench into submission.

IV.

Beale also argues that he was denied adequate resources to conduct his pro se defense.  Although Beale was given access to a computer, telephone, visitors, and the services of stand-by counsel, he contends that he was denied due process because he was not allowed to have private telephone conversations, he was required to meet with visitors in a video-monitored room, and his computer was inadequate.

-11-

We reject Beale's due process claim. During his Faretta hearing, see Faretta v. California, 422 U.S. 806 (1975), Beale was warned about the handicaps faced by pro se defendants who must mount their defense within the confines of the jailhouse setting. "[A] pretrial detainee has no abstract right to law libraries or legal assistance . . . ." United States v. Kind, 194 F.3d 900, 905 (8th Cir. 1999) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)). Furthermore, "[w]e have serious doubts whether a pretrial detainee who exercises his constitutional right to represent himself at trial thereby becomes entitled to legal resources over and above what are provided to the general inmate population." Id. Beale was afforded all the process he was due.

V.

Finally, Beale challenges his sentence of 134 months imprisonment. His first challenge is a reprise of his argument that Judge Montgomery should have recused herself. We have already dealt with that claim. His second challenge is that the court abused its discretion in denying a downward departure under United States Sentencing Commission, Guidelines Manual, §5K2.20 for "aberrant behavior" deviating from an otherwise law abiding life. What he fails to point out is that the court may depart downward under §5K2.20 "only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." Beale was convicted on five counts of tax evasion, one count of fraud, and one count of failure to appear in court. The variety and number of his criminal acts give the lie to any claim that Beale "committed a single criminal occurrence or single criminal transaction." His scheme required the creation of a shell corporation, manipulation of company payroll practices, Swiss bank accounts, and the collaboration of other business professionals such as Stagni. Furthermore, the instant scheme continued from 2000 to 2004, hardly a limited duration. Finally, Beale had been walking a tightrope of legality since at least 1992, the earliest point at which the record demonstrates his failure to meet his

-12-

tax obligations. His life was law abiding only in the technical sense that he escaped prosecution for almost a decade and a half. The district court did not abuse its discretion in denying a downward departure under §5K2.20.

Third, Beale claims that the district court abused its discretion in applying the section 3553(a) factors to his case. He does not allege procedural error, but substantive unreasonableness. Beale contends that his sentence was unjust because he has already lost his business and the respect of family and friends and because the sentence was greater than necessary to deter future misconduct. While making explicit reference to the sentencing factors under section 3553(a), the district court rejected both of these contentions and noted the "havoc" and "pain and agony" Beale had caused. Furthermore, he was sentenced within the properly calculated Guidelines range (134 months in a range of 121-151 months), which we presume to be reasonable. United States v. Coleman, 556 F.3d 851, 853 (8th Cir. 2009) (citing Rita v. United States, 127 S. Ct. 2456, 2462-63 (2007)). Beale has failed to show that his sentence was substantively unreasonable.

VI.

Accordingly, we affirm the judgment below.

_____