**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Harry GREENSPAN, aka Alfred A. Lugo, aka Alfred Anthony Lugo, aka Alex Lugo, aka Alex Stone, Defendant–Appellant.**

No. 93–2139.

United States Court of Appeals, Tenth Circuit.

June 6, 1994.

Peter Schoenburg of Rothstein, Donatelli, Hughes, Dahlstrom, Cron and Schoenburg, Albuquerque, NM, for appellant.

Louis E. Valencia, Asst. U.S. Atty. (U.S. Atty., Larry Gomez with him on the brief), for appellee.

Before EBEL and McKAY, Circuit Judges, and VAN BEBBER, District Judge.*

VAN BEBBER, District Judge.

The defendant-appellant, Harry Greenspan, appeals from the district court's denial of his motion to suppress physical evidence found in his car after a traffic stop on Interstate 25 in New Mexico. We affirm in part, reverse in part, and remand the case for further proceedings.

## I. FACTS

On October 21, 1992, Harry Greenspan was stopped while driving north on Interstate 25 between Albuquerque and Santa Fe by two New Mexico State Police officers, Jimmy R. Salmon and James Montoya. The officers testified that they stopped Greenspan for driving 74 miles per hour in a 65 mile-an-hour zone.

Prior to stopping Greenspan on I–25, Officers Salmon and Montoya had travelled from Albuquerque to Santa Fe to obtain new body armor. They rode together in Officer Salmon's patrol unit. In Santa Fe, the officers were issued their new body armor and visited the state police mechanic's office to inquire about a new patrol unit for Officer

* The Honorable G.T. Van Bebber, United States District Judge for the District of Kansas, sitting by designation.

Salmon. The officers left Albuquerque at approximately 2:30 p.m. While returning to Albuquerque, the officers decided to turn on the patrol car's radar equipment when they entered the Albuquerque patrol district at approximately mile marker 252 on I–25. They had not engaged the radar during their earlier drive north to Santa Fe or until this point in their return trip.

Immediately after turning on the radar equipment, Officer Salmon, the driver and radar operator, locked on and visually observed defendant's northbound vehicle in the fast lane of traffic exceeding the posted speed limit and travelling at 74 miles per hour. The officers crossed the median and pulled over defendant's vehicle at approximately 3:30 p.m. Officer Salmon approached defendant's vehicle, and as he did so, the driver started to get out of his vehicle. Officer Salmon asked the driver to remain in the vehicle and then approached the driver. Officer Salmon testified that immediately upon the driver rolling down his window, he smelled a strong odor of marijuana. Officer Salmon explained to the driver that he had stopped him for travelling 74 in a 65 mile-per-hour zone and asked for his driver's license. He observed that the driver was very nervous. The driver was Harry Greenspan, but gave his name as Alfred Lugo.

Officer Salmon then explained to Greenspan what he was going to do, and returned to his patrol car to write a traffic citation. While writing the citation, Officer Salmon told Officer Montoya that he smelled a strong odor of marijuana coming from the vehicle. Officer Montoya asked Officer Salmon for the name of the driver. Officer Salmon told Officer Montoya that the driver's name was Alfred Lugo. Montoya recognized the name as one that he had heard in the context of a previous case.

Nearly a month before the stop of Greenspan, Officer Montoya had stopped a man named Michael Haigerty on a nearby stretch of highway, Interstate 40, for speeding. Officer Montoya discovered marijuana in Haigerty's car. Upon being questioned by the police, Haigerty named the supplier of his marijuana as a man he knew by the name of Alfred Lugo. Haigerty also told another New Mexico State Police narcotics agent, Glenn Kelsey, that Lugo drove a blue Mercury Marquis of late 1980's vintage.

Officers Salmon and Montoya then approached defendant's car. Montoya was on the passenger side of the vehicle and Salmon was on the driver's side. Both testified that they smelled marijuana. Officer Salmon explained to Greenspan his options concerning the speeding citation. Greenspan responded that he would mail in his fine. Officer Salmon then asked Greenspan if he was carrying anything illegal and Greenspan said "no." Officer Salmon then asked Greenspan for permission to search the car and its contents. Officers Salmon and Montoya testified that Greenspan consented.

Officer Salmon asked Greenspan to step out of the vehicle. After walking to the rear of the car, Officer Salmon asked Greenspan for the keys to the trunk and was told they were in the ignition. Officer Salmon took the keys from the ignition and opened the trunk, where marijuana was discovered under a sheet, wrapped in clear plastic and placed in trash bags with baking soda between the bags. Upon being notified by Officer Salmon that there was marijuana in the trunk, Officer Montoya arrested Greenspan. A search of Greenspan revealed $3,600.00 in cash and two additional small baggies of marijuana.

Greenspan was indicted and charged with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and filed a motion to suppress the physical evidence obtained during the October 21, 1992, search. A suppression hearing was held by the district court, at which time testimony was adduced concerning the New Mexico State Police policies on speeding violations. Officer Montoya testified that it was the state police policy to stop all speeders and that he consistently stops persons travelling nine miles over the limit. Officer Salmon testified that he would not issue traffic citations to persons driving in the "traffic flow" at speeds of 65 to 68 miles per hour. Officer Montoya stated that he would not stop a car going 74 miles per hour only if everybody in the flow of traffic was driving 75 or faster. Evidence was also presented concerning the specific number of traffic

stops made by Officers Salmon and Montoya in the months before and after the stop of Appellant Greenspan.

At the suppression hearing, the trial court denied defendant's request to rewrap the marijuana seized from his vehicle in order to conduct a "smell test" of the marijuana's odor. The purpose of the proposed experiment was to impeach the arresting officers' testimony concerning the strong odor of marijuana emanating from defendant's car at the time of the stop.

The motion to suppress was denied by the trial court orally at the hearing, followed by a written order dated March 2, 1993. On March 8, 1993, Greenspan filed a motion for recusal of the trial judge based upon the judge's evidentiary rulings and in-court statements. It was denied. Also on March 8, 1993, Greenspan entered a plea of guilty to one count of possession of less than fifty kilograms of marijuana contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The guilty plea reserved Greenspan's right to appeal the trial court's denial of his motion to suppress.

On April 21, 1993, the trial court sentenced Greenspan to a term of 51 months to be followed by supervised release for three years, and to pay a special assessment of $50.00. At the sentencing hearing, Greenspan amended the affidavit accompanying his prior motion for recusal and renewed the motion based upon allegations that the district judge had received information concerning an investigation into alleged threats on the judge's life by Greenspan. It was denied. Greenspan filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

■ In reviewing the district court's denial of a motion to suppress evidence, we must accept the court's factual findings unless they are clearly erroneous and must consider the evidence in the light most favorable to the government. *United States v. Abreu*, 935 F.2d 1130, 1132 (10th Cir.), *cert. denied* —— U.S. ——, 112 S.Ct. 271, 116 L.Ed.2d 224 (1991). The ultimate question of whether a search and seizure was reasonable

under the Fourth Amendment is a question of law that we review de novo. *Id.*

■ We review the district court's denial of the motion for recusal under an abuse of discretion standard. *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1854, 123 L.Ed.2d 477 (1993). The trial court's decision to exclude an in-court reconstruction of the circumstances of the case—here, the so-called marijuana "smell test"—will also be reviewed for abuse of discretion. *United States v. Wanoskia*, 800 F.2d 235, 238 (10th Cir.1986).

## III. MOTION TO SUPPRESS

■ Appellant Greenspan appeals the trial court's denial of his motion to suppress on the ground that the officers' stop of his vehicle was unconstitutionally pretextual. Greenspan contends that because of Officer Montoya's previous involvement with the arrest of Michael Haigerty, the officers lay in wait for Greenspan's vehicle, visually recognized his car from the description given by Haigerty, and hoped to intercept him with a load of marijuana. Greenspan argues that the claimed purpose of the stop of his vehicle for travelling nine miles per hour over the posted speed limit was merely a pretext for stopping him to search for drugs.

■ As has often been stated by this court, "a pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." *United State v. Guzman*, 864 F.2d 1512, 1515 (10th Cir.1988). In *Guzman*, this court adopted the following test for determining whether an investigatory stop is unconstitutional: "[A] court should ask 'not whether the officer *could* validly have made the stop, but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose.'" 864 F.2d at 1517 (citing *United States v. Smith*, 799 F.2d 704, 709 (11th Cir.1986)). Thus, the court's inquiry is ob-

jective, rather than a subjective examination of the officer's motives for making the stop.

If New Mexico police officers routinely stop persons traveling nine miles over the posted speed limit, then the stop of Greenspan's vehicle would not be unconstitutionally pretextual at its inception, even if Officers Salmon and Montoya subjectively hoped to find "Alfred Lugo" in the car carrying marijuana. *See Guzman,* 864 F.2d at 1518. On the other hand, if a reasonable officer would not have stopped someone traveling at this speed absent some other reason, the stop might be deemed pretextual.

■ During the hearing on the motion to suppress in this case, the district court heard testimony from Officers Salmon and Montoya regarding the New Mexico State Police policies regarding speeding violations as we have previously summarized. Beyond the testimony of Officers Salmon and Montoya concerning the policies of the New Mexico State Police concerning speeding violations, the record is silent on this issue. In *United States v. Maestas,* 2 F.3d 1485, 1491 (10th Cir.1993), we held that the defendant bears the burden of proving that a legally sufficient basis asserted as a justification for a search or seizure was pretextual. Thus, if there is a lack of evidence on the issue of the police's policies, defendant bears the risk.

■ Here, Greenspan offered no evidence to show that a reasonable New Mexico State Police officer would not have stopped a person traveling nine miles over the posted speed limit absent some ulterior reason. Instead, he simply attempted to adduce evidence showing that the stop of the defendant was an out-of-the-ordinary occurrence for these particular officers. This type of evidence does not bear on the objective inquiry to be made in a pretextual stop case. We are left with only the testimony of Officers Montoya and Salmon concerning the New Mexico State Police policies regarding speeding violators. Based on this record, we conclude that a reasonable officer would have stopped someone traveling nine miles over the posted speed limit who was not within the flow of traffic. Greenspan has failed to meet his burden of proving that his stop was pretextual. We hold that the district court did not err in finding the stop of Greenspan constitutionally permissible.

## IV. RECUSAL

■ Greenspan next argues that the trial judge erred in failing to recuse himself in light of circumstances that would cause a reasonable person to question his impartiality. *See* 28 U.S.C. §§ 144 and 455(a). In the present case, the circumstances that Appellant claims should have led to a recusal by the trial judge involve an investigation by the Federal Bureau of Investigation into allegations that defendant had conspired to kill the trial judge or members of his family. The trial court was aware of the allegations at the sentencing hearing, and in fact expedited the hearing in order to "get [Greenspan] into the federal penitentiary system immediately, where he can be monitored more closely." Appellant's Appendix p. 358–59. In addition, the trial court refused to continue the sentencing hearing at the request of defendant's counsel, who had been appointed only two days before the expedited sentencing date.

It appears the alleged conspiracy to kill the trial judge and his family spanned several states and included a number of persons who had allegedly contributed large sums of money for the hiring of a "hit man." Greenspan contends that because the trial judge was aware of this alleged threat, a reasonable person might question the judge's impartiality and the judge should have recused himself pursuant to 28 U.S.C. § 455(a). He also argues that recusal is appropriate under 28 U.S.C. § 144, which provides for removal of a judge based on actual bias or prejudice.

■ "Under section 455(a), the judge is under a continuing duty to ask himself what a reasonable person, knowing all the relevant facts, would think about his impartiality." *United States v. Hines,* 696 F.2d 722, 728 (10th Cir.1982) (citing *Roberts v. Bailar,* 625 F.2d 125, 129 (6th Cir.1980)). On the other hand, a judge has as much obligation not to recuse himself where there is no reason to do so as he does to recuse himself when the converse is true. *City of Cleveland v. Cleveland Elec. Illuminating Co.,* 503 F.Supp. 368, 370 (N.D.Ohio 1980).

In *United States v. Cooley*, 1 F.3d 985, 993–94 (10th Cir.1993), this court noted that threats or attempts to intimidate a judge will not ordinarily satisfy the requirements for disqualification under section 455(a). Here, however, we are faced with a situation where a trial judge learned of an alleged conspiracy to assassinate him from the FBI, and the judge was told that the defendant he was about to sentence was involved in the conspiracy. Under section 455(a)'s objective standard, we must decide whether the judge's impartiality might reasonably have been questioned in this particular case.

The court concludes that under these unique circumstances, the trial judge should have recused himself from sentencing Greenspan. The judge learned of the alleged threat from the FBI, and there is nothing in the record to suggest the threat was a ruse by the defendant in an effort to obtain a different judge. At oral argument, the government conceded that a reasonable person might have questioned the judge's impartiality in light of the judge's knowledge that an investigation was being conducted into alleged threats against him by the defendant. In a case like the present, where there is no inference that the threat was some kind of ploy, the judge should have recused himself pursuant to section 455(a) and allowed another judge to sentence Greenspan. Had there been any reason to believe that threats were made only in an attempt to obtain a different judge, to delay the proceedings, to harass, or for other vexatious or frivolous purpose, recusal would not have been warranted, even if the judge learned of the threats from a third person such as a federal agent.

Combined with the judge's knowledge that an investigation was ongoing concerning alleged threats against him by defendant, the totality of the circumstances surrounding the sentencing hearing could have contributed to an appearance that the trial court was prejudiced against Greenspan. The trial court had accelerated the date of Greenspan's sentencing, for the stated reason that the court wanted to get Greenspan into the penitentiary system as quickly as possible, and the trial court refused to grant a continuance of the sentencing hearing even though defendant's

counsel had been appointed only two days before the sentencing date. Although any one of these actions standing alone would not provide sufficient reason to believe a judge was biased against the defendant, when considered in light of the judge's knowledge of the alleged threats against him, these factors might provide further bases for questioning the court's impartiality.

■ This is not to say that all death threats against a judge will mandate that judge's recusal under Section 455. To the contrary, if a death threat is communicated directly to the judge by a defendant, it may normally be presumed that one of the defendant's motivations is to obtain a recusal, particularly if he thereafter affirmatively seeks a recusal. As we have stated earlier, if a judge concludes that recusal is at least one of the defendant's objectives (whether or not the threat is taken seriously), then section 455 will not mandate recusal because that statute is not intended to be used as a forum shopping statute. Here, by contrast, the defendant did not communicate the death threat to the judge, nor is there any suggestion that the defendant ever intended the judge to learn of the threat before it was actually carried out. Thus, there is nothing here to suggest that the defendant was using the threat as a device to force a recusal.

Similarly, if a defendant were to make multiple threats to successive judges or even to multiple judges on the same court, there might be some reason to suspect that the threats were intended as a recusal device. Once again, that scenario is not presented here as this threat was directed only at a single judge and there is no suggestion that the threat was intended to be communicated to the judge before it was carried out.

We observed that this threat was not delivered in court or in connection with an official judicial proceeding involving this defendant. Thus, the threat is properly characterized as an "extrajudicial source." As such, the Supreme Court has recently advised that it has a higher potential for generating a situation where the judge's impartiality might reasonably be questioned than would be the case if the incident arose during the course of the proceedings themselves. *Liteky v. United*

*States,* —— U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

■ Finally, we note what is surely obvious—that our ruling today should not encourage threats against judges in order to obtain recusals. We have tried to state, as clearly as possible, that any such efforts will be futile. An uncommunicated threat will, by definition, not be an effective recusal device, and we hold that a communicated threat may, under all of the circumstances, be disregarded by the judge for purposes of recusal if the judge concludes that recusal is one of the objectives of the defendant. Furthermore, threats against judges are serious crimes, and any such ploy would likely result in further ancillary prosecution against a defendant in a way that may significantly multiply his or her problems with the law.

The bottom line here is that this judge learned of an apparently genuine death threat made against him and against his family under circumstances that made it quite unlikely that the threat was intended as a device to obtain a recusal. The judge obviously took the threat very seriously, and chose to accelerate court procedures in order to reduce the risk to him and his family as he perceived it. Under such circumstances, it is obvious to us that a reasonable person could question the judge's impartiality. Even if this judge were one of those remarkable individuals who could ignore the personal implications of such a threat, the public reasonably could doubt his ability to do so.

■ Recusal under section 455 is to be judged on the record. It is not a question of either the government or the defendant bearing a burden of proof. Rather, recusal is an action taken by the judge, and the judge must document the reasons for his or her decision so that the decision may be reviewed, if necessary, by an appellate court. Here, the record convinces us that the judge's impartiality might reasonably be questioned, and thus his recusal is mandated by 28 U.S.C. § 455(a).

There are few characteristics of a judiciary more cherished and indispensable to justice than the characteristic of impartiality. Congress has mandated that justice must not only be impartial, but also that it must reasonably be perceived to be impartial. 28 U.S.C. § 455(a). As the Supreme Court noted in *Liljeberg v. Health Servs. Corp.,* 486 U.S. 847, 859–60, 108 S.Ct. 2194, 2202–03, 100 L.Ed.2d 855 (1988), the purpose of section 455(a) is "to promote public confidence in the integrity of the judicial process." Our decision today is nothing more than an application of these hallowed principles to a very clear record.

■ Our inquiry does not end with the conclusion that the trial judge should have recused himself under the section 455(a) standard. We must also assess what remedy is appropriate. In doing so, we must specifically consider whether the judge's violation of section 455(a) is harmless error that does not warrant setting aside Greenspan's sentence. *See Liljeberg,* 486 U.S. at 862, 108 S.Ct. at 2203–04. The government urges that even if we determine that the trial judge violated section 455(a)'s standard, because Greenspan was sentenced pursuant to the Federal Sentencing Guidelines and within the applicable guideline range, any violation of section 455(a) is harmless error. We disagree. The Sentencing Guidelines do provide a range from within which the court may sentence Greenspan, and the trial court chose to sentence him at the high end of the range. We cannot conclude the error was harmless.

Finally, we note that although the alleged threat by the defendant against the trial judge might still be regarded as an "extrajudicial source" for purposes of recusal under section 455(a) in a subsequent sentencing proceeding administered by a different judge, the additional factor of a second judge against whom the threat was not personally directed provides sufficient insulation so as to avoid any necessary conclusion that the second judge's impartiality could be reasonably questioned. We therefore remand the case for resentencing by a different judge.

## V. THE "SMELL TEST"

■ Appellant's final contention on appeal is that the trial court erred when it refused to allow him to perform an in-court

experiment on the marijuana that was seized from his vehicle. Specifically, at the suppression hearing, Greenspan asked to repackage the marijuana that had been seized from his vehicle and perform a "smell test" to see if the marijuana emitted a strong odor as the arresting officers testified that it did. Appellant claims that it was an abuse of the trial court's discretion to deny his request.

The government contends that the trial court did not err in denying Greenspan's request because the conditions of the proposed experiment would have been significantly different from those existing at the time the arresting officers smelled the odor of marijuana emanating from Greenspan's car. The record indicates that at the time Greenspan was stopped, the marijuana was wrapped in three layers of plastic and had been in Greenspan's car for approximately twenty-four hours. The arresting officers testified that there were some small tears in the marijuana's packaging when it was retrieved from the vehicle, and Greenspan could not remember whether or not such tears were present prior to the search. Additionally, Greenspan testified that the marijuana might have had a slight smell, although he denied that it emitted any strong odor.

We conclude that there was no abuse of discretion in the trial court's refusal to allow the "smell test" experiment. Whether or not to allow the admission of experimental evidence is within the sound discretion of the trial court. *Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1278 (8th Cir.1987). The record does not disclose the details of the conditions proposed to surround defendant's experiment, including how the marijuana would be packaged, and whether it would sit in a closed car trunk for a full twenty-four hours before the test. It appears that the conditions surrounding the officers' stop of Greenspan would have been virtually impossible to reconstruct in court. *See United States v. Michelena–Orovio*, 702 F.2d 496, 499–500 (5th Cir.1983) (refusal to allow smell test of marijuana bales by jury was not abuse of discretion), *reh'g*, 719 F.2d 738 (5th Cir.1983), *cert. denied*, 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984); *United States v. Vallejo*, 541 F.2d 1164, 1165

(5th Cir.1976) (refusal to allow smell test of marijuana was not abuse of discretion).

Accordingly, the decision of the district court is AFFIRMED in part and REVERSED in part. The case is REMANDED for further proceedings consistent with this opinion.