**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MENDY READ-FORBES,

Defendant - Appellant.

No. 23-3238
(D.C. No. 2:12-CR-20099-KHV-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

Proceeding pro se, Mendy Read-Forbes appeals the denial of her Motion for

Recusal and her Motion for Compassionate Release. Because the district court acted

within its discretion in denying both motions, we affirm.

## I.    BACKGROUND

In March 2015, Ms. Read-Forbes pleaded guilty to one count of conspiracy to

commit money laundering. A Presentence Investigation Report set

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Federal
Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Ms. Read-Forbes's total offense level at 37 and her criminal history category at I, resulting in a U.S. Sentencing Commission Guidelines range of 210 to 240 months.[1] The parties jointly recommended a sentence of 210 months, and in April 2015, the district court sentenced Ms. Read-Forbes to 240 months' imprisonment.

Ms. Read-Forbes is currently serving her prison term, and in May 2023, she filed a Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). Ms. Read-Forbes argued that extraordinary and compelling reasons justified her release because (1) under the current Guidelines, her offense level would be reduced two levels, (2) new caselaw establishes her offense level should be reduced sixteen levels because the Government did not establish actual loss, and (3) the Federal Bureau of Prisons (BOP) is not adequately addressing her serious medical conditions.

While the Motion for Compassionate Release was pending before District Judge Kathryn H. Vratil, Ms. Read-Forbes moved to recuse Judge Vratil on two grounds. First, Ms. Read-Forbes argued that Judge Vratil had been antagonistic towards her throughout the proceedings. And second, while the Motion for Compassionate Release was pending, Judge Vratil received an anonymous letter stating that Ms. Read-Forbes had threatened to kill Judge Vratil. The contents of the letter are not in the record, but Ms. Read-Forbes states that the letter claims "[Ms. Read-Forbes] had a cell phone and was going to have Federal Judge Vratil

---

[1] The Guidelines sentencing range was 210 to 262 months, but the statutorily authorized maximum sentence is 240 months.

2

blown up or killed." ROA Vol. II at 52. Ms. Read-Forbes explains that United States Marshals questioned her about the letter and said Judge Vratil "would be made aware" of the alleged threat. *Id.*

The district court denied the Motion for Recusal and Motion for Compassionate release in a combined order.[2] As to the Motion for Recusal, the court first explained that its comments and rulings did not demonstrate antagonism towards Ms. Read-Forbes. Next, the court decided that the anonymous letter did not justify recusal because although law enforcement investigated the alleged threat, there was no information suggesting Ms. Read-Forbes had actually threatened Judge Vratil.

After deciding recusal was not warranted, the district court rejected the Motion for Compassionate Release, concluding Ms. Read-Forbes did not demonstrate extraordinary and compelling reasons warranting release. The court alternatively determined that the 18 U.S.C. § 3553(a) factors did not support a reduced sentence. Although the court denied Ms. Read-Forbes's motion, it ordered BOP to provide her "with a written summary of the status of any outstanding diagnostic tests and any recommended medical and dental procedures or consultations." ROA Vol. III at 80 n.11.

Ms. Read-Forbes timely appealed the denial of both motions.

---

[2] Our references to "the district court" or "the court" refer to Judge Vratil.

## II.    DISCUSSION

Because Ms. Read-Forbes is proceeding pro se, we construe her filings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, we may not advocate on her behalf. *Id.* We first consider the Motion for Recusal and then the Motion for Compassionate Release. We conclude the district court acted within its discretion when it denied both motions.

### A.    *Motion for Recusal*

A federal judge must disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). More specifically, a judge must recuse "if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000). But a judge also has an "obligation not to recuse" if "there is no reason to do so." *United States v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir. 1994); *see also Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (explaining "that a judge has as strong a duty to sit when there is no legitimate reason to recuse").

We review the denial of a recusal motion for an abuse of discretion. *Greenspan*, 26 F.3d at 1004. But recusal "is not a question of either the government or the defendant bearing a burden of proof." *Id.* at 1007. "Rather, recusal is an action taken by the judge, and the judge must document the reasons for his or her decision so that the decision may be reviewed, if necessary, by an appellate court." *Id.* Recusal is thus "judged on the record." *Id.* Further, recusal inquiries "are extremely fact

4

driven 'and must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence.'" *Nichols*, 71 F.3d at 351 (alteration in original) (quoting *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995)).

Ms. Read-Forbes contends Judge Vratil was antagonistic towards her throughout the proceedings and that the alleged death threat warranted recusal. We consider each argument in turn, concluding neither is persuasive.

### 1.     Purported Antagonism

Ms. Read-Forbes argues that her "sentence and the errors contained within [her] case" demonstrate bias. Appellant's Br. at 24. Additionally, she contends that Judge Vratil's comments demonstrate antagonism towards Ms. Read-Forbes.

The Supreme Court has explained that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Similarly, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*

Here, a reasonable person, viewing all available facts, would not question the district court's impartiality. First, as to Ms. Read-Forbes's sentence, there is no

5

record evidence suggesting the sentence was motivated by antagonism. The imposed sentence was within the Guidelines range, and the record indicates the sentence was based on information in the Presentence Investigation Report. *See United States v. Lowe*, 106 F.3d 1498, 1504 (10th Cir. 1997) (concluding recusal was not required where "the sentence imposed was proper according to the principles in the Sentencing Guidelines, and the judge conducted the resentencing fairly and properly"). Accordingly, the imposed sentence does not demonstrate a "deep-seated" antagonism that made it impossible for Judge Vratil to fairly rule on the Motion for Compassionate Release. *See Liteky*, 510 U.S. at 555.

Turning to Judge Vratil's comments, Ms. Read-Forbes's briefing on appeal does not identify the comments she believes demonstrate bias. But in her Motion for Recusal, she pointed to the following statement from Judge Vratil during a hearing: "I don't even know what to believe about your alleged medical conditions. . . . I don't know what to think about your – all your mental problems and everything else because it seems to me that you are such a drama queen and such a manipulator and a chronic liar . . . ." ROA Vol. II at 53. The Motion for Recusal also quoted the following statement: "I'm not upset. I'm just saying [Ms. Read-Forbes] crossed the line in lying with the court and it's not a line that you can retreat from." *Id.* at 56.

The district court explained these statements were "responding to various defense arguments that seemed to minimize [Ms. Read-Forbes's] culpability or suggest that a sentence at the low end of the guideline range was appropriate." ROA Vol. III at 70. The court further stated these comments were responding "to defense

6

arguments that [Ms. Read-Forbes] should receive a lesser sentence because of an alleged mental disorder." *Id.*

The identified comments do not demonstrate bias. The district court was stating its opinion of Ms. Read-Forbes's credibility in response to arguments concerning Ms. Read-Forbes's sentence. And although the challenged comments may have been critical of Ms. Read-Forbes, we are not persuaded they evince "deep-seated" antagonism. *See Liteky*, 510 U.S. at 555; *see also id.* at 555–56 (holding that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not establish bias).

In short, neither the imposed sentence nor the district court's comments demonstrate antagonism requiring recusal.[3]

## 2.    Alleged Death Threat

Ms. Read-Forbes next argues that Judge Vratil should have recused after learning about the alleged death threat. We conclude the alleged threat was not serious and thus did not warrant recusal.

---

[3] Ms. Read-Forbes lists attorneys that she states would provide sworn testimony that Judge Vratil was biased. Even assuming the attorneys would provide such testimony, we must base our analysis on facts and reasonable inferences, not the views of Ms. Read-Forbes's attorneys. *See United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) (explaining the recusal "inquiry is limited to outward manifestations and reasonable inferences drawn therefrom" and that "the initial inquiry is whether a reasonable *factual* basis exists for calling the judge's impartiality into question").

When a defendant allegedly threatens a judge, the recusal analysis turns "on whether a reasonable observer would perceive the threats as serious and, moreover, to be of the kind that would cause a reasonable observer to question the [judge's] impartiality." *United States v. Martinez*, 92 F.4th 1213, 1259 (10th Cir. 2024). Because this analysis is objective, it "does not turn on a particular district judge's subjective assessment of the seriousness of the threats." *Id.*

In addition to the seriousness of the threat, courts should consider whether the defendant's objective was to obtain a recusal. *Greenspan*, 26 F.3d at 1006–07. "[I]f a judge concludes that recusal is at least one of the defendant's objectives (whether or not the threat is taken seriously), then section 455 will not mandate recusal because that statute is not intended to be used as a forum shopping statute." *Id.* at 1006. A judge can generally presume that the objective is recusal "if a death threat is communicated directly to the judge by a defendant." *Id.* Conversely, the defendant's objective is less likely to be recusal if "the defendant did not communicate the death threat to the judge" and there is no "suggestion that the defendant ever intended the judge to learn of the threat before it was actually carried out." *Id.* Put differently, if a threat is an "extrajudicial source"—meaning it "was not delivered in court or in connection with an official judicial proceeding involving [the] defendant"—then the threat "has a higher potential for generating a situation where the judge's impartiality might reasonably be questioned." *Id.*

In *United States v. Greenspan*, for example, the FBI investigated "allegations that [the] defendant had conspired to kill the trial judge or members of [the judge's]

8

family." *Id.* at 1005. The alleged conspiracy "spanned several states and included a number of persons who had allegedly contributed large sums of money for the hiring of a 'hit man.'" *Id.* The judge knew about these allegations and expedited the defendant's sentencing hearing so the defendant could be placed "into the federal penitentiary system immediately" and thus be "monitored more closely." *Id.* The judge also "refused to continue the sentencing hearing at the request of [the] defendant's counsel, who had been appointed only two days before the expedited sentencing date." *Id.*

Under these "unique circumstances," we concluded that a reasonable person would question the judge's impartiality. *Id.* at 1006. The defendant did not communicate the threat to the sentencing judge, and there was no indication the defendant wanted the judge to learn of the threat before it was accomplished. *Id.* Accordingly, there was no evidence the "apparently genuine death threat . . . was intended as a device to obtain a recusal." *Id.* at 1007. Moreover, "[t]he judge obviously took the threat very seriously, and chose to accelerate court procedures in order to reduce the risk to him and his family as he perceived it." *Id.* Considering these facts, it was "obvious . . . that a reasonable person could question the judge's impartiality." *Id.* We thus remanded "for resentencing by a different judge." *Id.*

Like in *Greenspan*, the alleged death threat here came from an extrajudicial source—the anonymous letter. Additionally, Judge Vratil stated that "law enforcement officers apparently concluded the investigation about the letter without determining who sent it or for what purpose." ROA Vol. III at 72. Judge Vratil was

9

thus "unaware of any information which ties [Ms. Read-Forbes] to the letter." *Id.* These facts may suggest the purpose of the alleged threat was not to obtain a recusal. However, this case is materially different from *Greenspan* because the record here does not indicate the threat was serious.

Recall that in *Greenspan*, the defendant, who was not yet in federal prison, allegedly conspired to kill the judge and the judge's family. 26 F.3d at 1005. The "alleged conspiracy . . . spanned several states and included a number of persons who had allegedly contributed large sums of money for the hiring of a 'hit man.'" *Id.* We described this as "an apparently genuine death threat." *Id.* at 1007. The alleged threat here is markedly different. As Ms. Read-Forbes describes it, the letter stated only that Ms. Read-Forbes "had a phone and was going to blow up" Judge Vratil. Appellant's Br. at 24. But Ms. Read-Forbes was and still is imprisoned, and there is no suggestion others were involved in the alleged plot. Ms. Read-Forbes also states she was "cleared in the matter," indicating the threat was not serious. *Id.* Similarly, Judge Vratil was "unaware of any information" suggesting Ms. Read-Forbes "threatened [Judge Vratil], directly or through a third party." ROA Vol. III at 72.

This case is also different from *Greenspan* because there is no indication Judge Vratil took steps to mitigate the risk of the alleged threat. *See Greenspan*, 26 F.3d at 1005. While recusal may be necessary even in the absence of such steps,[4]

---

[4] We have explained that *United States v. Greenspan*, 26 F.3d 1001 (10th Cir. 1994), should not be read as requiring a serious threat "plus" something more for recusal to be justified. *See United States v. Martinez*, 92 F.4th 1213, 1263 n.16 (10th Cir. 2024) (noting "it would be ill-advised to infer from" *Greenspan* "a universally

under the facts of this case, the lack of response by Judge Vratil further suggests a reasonable observer would not consider the threat serious and would not question Judge Vratil's impartiality.

A reasonable observer knowing all relevant facts would not perceive the alleged death threat as serious and would thus not question Judge Vratil's impartiality. Accordingly, Judge Vratil acted within her discretion when she declined to recuse.

### B.    Motion for Compassionate Release

Generally, federal courts may not "modify a term of imprisonment once it has been imposed." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (quoting 18 U.S.C. § 3582(c)). One exception to this general rule is 18 U.S.C. § 3582(c)(1), the "compassionate release" statute. *United States v. McGee*, 992 F.3d 1035, 1039, 1041 (10th Cir. 2021).

Ms. Read-Forbes brought her Motion for Compassionate Release under § 3582(c)(1)(A), which permits district courts to reduce a defendant's sentence "if three requirements are met." *Id.* at 1042. The requirements are as follows: "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with

---

applicable 'plus' factor that must exist beyond a serious threat in order to justify recusal" because *Greenspan* "speaks of the necessity for the judge to recuse, before even mentioning the court's decision to mitigate the risk of the defendant's threats through accelerating his sentencing proceeding").

applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a)."[5] *Id.* If any of these requirements are lacking, the district court may deny the motion for compassionate release without considering the other requirements. *Id.* at 1043.

We review an "order denying relief on a § 3582(c)(1)(A) motion for abuse of discretion." *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021). "A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact." *Id.* (quotation marks omitted).

At the first step of the analysis, district courts "have the authority to determine for themselves what constitutes 'extraordinary and compelling reasons.'" *McGee*, 992 F.3d at 1045 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before the district court, Ms. Read-Forbes presented three arguments for why extraordinary and compelling reasons existed.[6] The district court considered these arguments but determined none

---

[5] A court may grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) only if the defendant has exhausted her administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A). However, this exhaustion requirement is not jurisdictional. *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021). Because the Government has not argued exhaustion on appeal, we review Ms. Read-Forbes's motion on the merits. *See id.* (reviewing motion for compassionate release on the merits when the government did not argue exhaustion on appeal).

[6] On appeal, Ms. Read-Forbes argues the district court erred by failing to consider that she was sexually assaulted in prison. However, Ms. Read-Forbes did not present her sexual assault claim in her Motion for Compassionate Release. Instead, she presented this argument in an "Addendum" that was postmarked on October 20, 2023, the day the district court denied the Motion for Compassionate Release. ROA Vol. III at 85. Because Ms. Read-Forbes did not present arguments concerning the sexual assault in her Motion for Compassionate Release, the district court did not err by not considering the sexual assault. *See United States v. Sanchez*,

12

were persuasive. We now review Ms. Read-Forbes's arguments and conclude the district court acted within its discretion when it determined there were not extraordinary and compelling circumstances warranting compassionate release.

## 1.    Changes to Guidelines

In her Motion for Compassionate Release, Ms. Read-Forbes argued that under the 2021 Guidelines, her base offense level and thus sentence would be lower.[7] Ms. Read-Forbes argued this change to the Guidelines was an extraordinary and compelling circumstance. The district court rejected this argument, concluding the identified change is non-retroactive and thus "insufficient to establish extraordinary and compelling reasons for release." ROA Vol. III at 75. The court further explained that Ms. Read-Forbes "has not addressed the merits of the [G]overnment's objections to the guideline range which it withdrew based on the agreed guideline range in the plea agreement." *Id.* at 76.

---

446 F. App'x 149, 150 (10th Cir. 2011) (unpublished) (declining to consider argument submitted to the district court in a reply because the argument "was not properly presented to the district court"). And because the argument was not properly before the district court, we do not consider it on appeal. *See id.*; *see also United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002) (explaining "the general rule that we do not address arguments presented for the first time on appeal").

[7] At sentencing, Ms. Read-Forbes's base offense level was 24 because the loss amount was greater than $1,000,000. *See* United States Sentencing Commission, *Guidelines Manual*, §§ 2S1.1(a)(2), 2B1.1(b)(1)(I) (Nov. 2014). Ms. Read-Forbes argues that under the Guidelines in effect when she filed her Motion for Compassionate Release, her base offense level would be 22 because the loss amount was more than $550,000 but less than $1,500,000. *Id.* §§ 2S1.1(a)(2), 2B1.1(b)(1)(H)–(I) (Nov. 2021).

Ms. Read-Forbes does not identify the change to the Guidelines as an issue on appeal. Her opening brief to this court does include two passing statements that under the current Guidelines, her base offense level would be two points lower. But she does not acknowledge the district court's reasoning on this issue or argue that it was incorrect.

Although we must construe Ms. Read-Forbes's filings liberally, we cannot "construct arguments or theories" on her behalf "in the absence of any discussion of [the relevant] issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991). Because Ms. Read-Forbes did not argue the district court erred in its evaluation of the change to the Guidelines, that argument is waived, and we do not consider it. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) ("Issues will be deemed waived if they are not adequately briefed." (brackets and quotation marks omitted)).

## 2.    Changes in Caselaw

Ms. Read-Forbes argues that extraordinary and compelling reasons exist because under new Supreme Court authority, her base offense level and thus sentence would be lower. The district court rejected this argument, and Ms. Read-Forbes has not demonstrated any error in its reasoning.

Ms. Read-Forbes's offense level was enhanced sixteen levels because the loss resulting from her money laundering was more than $1,000,000. *See* United States Sentencing Commission, *Guidelines Manual*, § 2B1.1(b)(1)(I) (Nov. 2014). This calculation was based on the amount Ms. Read-Forbes intended to launder, which

14

was more than the amount she actually laundered, because the commentary to the Guidelines defines "loss" as "the greater of actual loss or intended loss." *Id.* § 2B1.1, comment. (n.3(A)).

Ms. Read-Forbes argues that after *Kisor v. Wilkie*, 588 U.S. 558 (2019), courts should no longer defer to the commentary's "loss" definition. In *Kisor*, the Supreme Court held that courts may defer to executive agency commentary "only if a regulation is genuinely ambiguous." 588 U.S. at 574. However, as the district court recognized, we have held that "*Kisor* does not apply to sentencing guideline commentary." *United States v. Coates*, 82 F.4th 953, 956 (10th Cir. 2023). Accordingly, we continue to give "controlling weight" to the Sentencing Commission's commentary, provided the commentary "does not violate the Constitution or a federal statute" and is not "plainly erroneous or inconsistent with the regulation." *Stinson v. United States*, 508 U.S. 36, 45 (1993) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)); *see also Coates*, 82 F.4th at 956–57 (holding the "*Stinson* standard controls").

The district court concluded that even if a post-sentencing change in caselaw could demonstrate extraordinary and compelling reasons, Ms. Read-Forbes had not established a change in caselaw because *Kisor* is inapplicable to the Sentencing Commission's commentary. The court also determined that Ms. Read-Forbes had not shown the relevant commentary violated federal law, was plainly erroneous, or was inconsistent with the Guidelines.

On appeal, Ms. Read-Forbes emphasizes that the Government did not prove she actually laundered $1,000,000. However, she does not challenge the district court's conclusion that *Kisor* is inapplicable. Nor do we perceive any error in the district court's reasoning. As a result, Ms. Read-Forbes has not shown the district court abused its discretion when it rejected her argument concerning *Kisor*.

### 3.    Medical Conditions

Lastly, Ms. Read-Forbes argues there are extraordinary and compelling circumstances because BOP has not adequately addressed her serious medical conditions. The district court did not abuse its discretion when it rejected this argument.

Ms. Read-Forbes identifies a host of medical conditions that she suffers from and believes justify a reduced sentence. For example, she states she "suffers from Spinal Stenosis, Carpal Tunnel Syndrome for 7 years, no Dental Care leaving her with only 2 teeth, and pre-diabetes, liver lesions, ovarian cyst hyatel [sic] hernia, umbilical hernia and other untreated problems." Appellant's Br. at 13. She contends these conditions "were to be reviewed every 4 to 6 months recommended by outside doctors but no follow ups have occurred in over 2 years." *Id.*

The district court reviewed Ms. Read-Forbes's medical records and concluded they "reveal a number of medical conditions and some delays in recommended diagnostic tests or treatment." ROA Vol. III at 79. But the court also found that BOP "is attempting to address [Ms. Read-Forbes's] medical concerns and has referred her to several outside providers of care." *Id.* For example, in May 2023, Ms. Read-Forbes

16

visited a neurologist to review her spinal stenosis treatment. Also in May 2023, Ms. Read-Forbes visited an eye doctor, and was transported to an emergency room after she complained of numbness on her right side. This treatment all occurred before Ms. Read-Forbes filed her Motion for Compassionate Release.

The record further indicates that Ms. Read-Forbes received medical treatment for, among other things, carpal tunnel syndrome in the months before she filed her Motion for Compassionate Release. Similarly, Ms. Read-Forbes received dental treatment in the months before her motion.

After considering this evidence, the district court concluded that Ms. Read-Forbes had "not shown that BOP's overall handling of her medical and dental care constitutes an extraordinary and compelling reason for release." *Id.* The court also rejected Ms. Read-Forbes's argument that because of her underlying conditions, she is "at increased risk of severe disease or death" if there is a COVID-19 outbreak. *Id.* at 80. The court rejected this argument because Ms. Read-Forbes did not claim she lacked access to the COVID-19 vaccine. *See United States v. Hald*, 8 F.4th 932, 939 n.5 (10th Cir. 2021) (noting that "access to vaccination . . . would presumably weigh against a finding of extraordinary and compelling reasons"); *United States v. Gunkel*, No. 22-5055, 2022 WL 17543489, at *2 (10th Cir. Dec. 9, 2022) (unpublished) (concluding it was not an abuse of discretion to deny compassionate release where inmate with medical conditions had access to the COVID-19 vaccine).

17

Despite concluding there were not extraordinary and compelling circumstances, the district court noted there appeared to be "various diagnostic tests, medical consultations and dental treatment, which have yet to be completed." ROA Vol. III at 80 n.11. It thus ordered BOP to provide Ms. Read-Forbes with a written update within thirty days.

The district court's factual findings are supported by the record, and Ms. Read-Forbes has not shown the findings are clearly erroneous. *See Hemmelgarn*, 15 F.4th at 1031 (stating a district court abuses its discretion when it relies on a "clearly erroneous finding of fact" (quotation marks omitted)). In particular, she has not shown it was clearly erroneous for the court to find that, on balance, BOP was addressing her medical and dental conditions, despite some delays.[8] For these reasons, Ms. Read-Forbes has not shown the district court abused its discretion when it concluded her medical conditions did not demonstrate extraordinary and compelling circumstances.

* * *

Because Ms. Read-Forbes has not shown an extraordinary and compelling reason justifying release, the district court did not abuse its discretion by denying her

---

[8] Ms. Read-Forbes states BOP did not provide her with a written update within thirty days, as ordered by the district court. She contends this failure to comply demonstrates extraordinary and compelling circumstances. However, this argument relies on events that transpired after the district court denied the Motion for Compassionate Release. We do not consider this argument because it raises an issue that was not in Ms. Read-Forbes's motion and thus not before the district court. *See Mora*, 293 F.3d at 1216 (stating "the general rule that we do not address arguments presented for the first time on appeal").

Motion for Compassionate Release. And because we affirm on this ground, we need not consider the district court's alternative conclusion that the § 3553(a) factors do not support early release.

### III.    CONCLUSION

The district court acted within its discretion when it denied Ms. Read-Forbes's Motion for Recusal and Motion for Compassionate Release. We thus AFFIRM.

Entered for the Court

Carolyn B. McHugh
Circuit Judge